REGINALD DAVID LEATHERBERRY *v.* STATE
OF MARYLAND

[No. 206, September Term, 1967.]

*Decided June 7, 1968.*

The cause was submitted to MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Milton B. Allen* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Reginald D. Leatherberry, the appellant, was indicted in the Criminal Court of Baltimore for assaulting a police officer and violating the narcotics laws, and was convicted of the latter charge in the Criminal Court of Baltimore, Judge J. Harold Grady presiding without a jury.

On June 2, 1966 at approximately 9:10 in the morning, Officer Lewis Davis, of the Baltimore City Police Department, was summoned to a store at the corner of Pennsylvania and Mosher Streets to investigate a crime not related to this case, and involving a third person. The officer testified that he observed Leatherberry sitting at a booth in the corner of the store and a brown medicine bottle with several pills in it, sticking out of his pocket. When the officer asked Leatherberry what was in the bottle, he removed the bottle from his pocket and stepped towards the officer as if to show the contents to him. Leatherberry suddenly lurched forward and struck the officer on the chest, knocking him off balance. Leatherberry then ran out of the store; Officer Davis gave chase and caught up with him as he threw away the brown bottle which was not recovered. Leatherberry was charged with assaulting a police officer and was taken to Western District Police Station where, prior to incarceration, he was searched by the turnkey, Joseph Levin, who discovered some cellophane envelopes on his person. The contents of these envelopes were turned over to the Narcotics Squad which sent them to a chemist for analysis. The report of the chemist showed that the envelopes contained heroin hydrochloride.

Leatherberry testified that he was sitting in a back booth at the Town Store at the time in question, but that he was sitting in such a way that the officer could not have seen what was in his back pocket. He further testified that he was eating breakfast, and that someone else whom he did not know was also sitting at the booth. The officer then came up to the other fellow and

asked him to empty his pockets on the table. Leatherberry further testified that as he got up to leave the officer told him to sit down and went through his pockets and found a container that looked like a small tube which fell on the floor. Leatherberry then picked the tube up and ran outside. He testified that he never touched the officer.

In support of Leatherberry's testimony, Sonny Clark, the person who called the police to the store, testified that the officer, after asking the unidentified man sitting at Leatherberry's booth to empty his pockets on the table, asked Leatherberry to do the same. Clark testified that he was unable to see what Leatherberry took out of his pockets, but as he began to empty his pockets Leatherberry ran out of the store.

At the end of the trial, the court concluded that the officer had not searched Leatherberry in the store nor had he placed him under arrest until later, and that the subsequent search was legal and the contraband seized as a result of that search was properly admitted into evidence. The court found that the assault "was purely incidental to the boy's running past the officer" and found Leatherberry guilty only of possession of narcotics.

Leatherberry contends that the police officer did not have a right to accost and to search him while he was in the store; that he therefore had a right to leave the premises while being illegally accosted and searched by the policeman, and that the arrest and subsequent search and seizure of the narcotics was illegal.

Alleging that the accosting by the police officer was illegal, Leatherberry cites *Shipley v. State,* 243 Md. 262, 268, 220 A. 2d 585 and *Morgan v. State,* 2 Md. App. 440, 442, 234 A. 2d 762.

In *Shipley v. State, supra,* two police officers, upon observing a car with three occupants remain stationary in front of the Beth Jacob Synagogue for some time decided to investigate. One of the police officers drove the police car alongside the stationary automobile while the second policeman, leaning out of the window of the patrol car, shined his flashlight on his police badge, identified himself as a policeman and asked the driver for his registration card and driver's license. One suspect, then alighting from the car, approached the police car blocking the

view of the police officer with the flashlight. The second police officer then got out of the police car and walked to the other car. From the dashboard light and the light of the police car, he observed a dirk knife on the floor protruding from under the driver's seat. The court held "that the police officers were justified in the environment, at the time and under the circumstances, in accosting the appellants and looking into the car from the street, where obviously they lawfully were, to see if any illegal article was in it," *Shipley v. State, supra* at 243 Md. at 268.

In *Morgan v. State, supra,* two police officers in the early hours of November 8, 1966, drove into a gas station. One officer who intended to use the men's rest room was told by the station attendant that two men had been occupying the facility, which had only one toilet and a sink, for approximately twenty minutes. The policeman waited until the two men emerged from the rest room and watched them walk down the street "holding themselves." One police officer testified that the two men appeared dazed. Soon thereafter the police officers drove their vehicle alongside the two men and one of the officers called out "hey, you just took a needle up there in the Kayo station." This Court held that "it is well established that when one is approached by a police officer and merely questioned as to his identity and actions, this is only accosting and not an arrest," *Morgan v. State,* 2 Md. App. at 442.

Leatherberry agrees that the police may accost a person merely to question his identity and actions but only under particular and unusual circumstances. He contends that the time of day, 9:30 in the morning would not be an unusual circumstance and the place, a bar or tavern, would not be the particular environment talked about in *Shipley v. State, supra.* Whether the officer's action in this case was proper or not, appellant's subsequent action in assaulting the officer was clearly unlawful and justified the subsequent arrest.

Leatherberry next complains that the police officer illegally searched him while on the premises. The trial judge evidently believed the testimony of the police officer and he does not have to believe every story given by the accused. *Anderson v. State,* 3 Md. App. 362, 369, 239 A. 2d 579.

Leatherberry next complains that he had a right to leave the store while he was being illegally accosted and searched by the

police officer. We have found that the police officer did not search the appellant on the premises, and assuming without deciding, that the accosting was improper this did not authorize the assault.

Lastly, Leatherberry contends that his subsequent arrest and the search and seizure following the arrest was illegal.

Clark and Marshall, *Crimes* § 10.19 at 654 (6th Ed. 1958) defines battery as follows:

> "Any unlawful injury whatsoever, however slight, actually done to the person of another, directly or indirectly, in an angry, revengeful, rude, or insolent manner, is a battery. Every battery includes an assault, so that on an indictment for assault and battery one may be convicted of an assault only."

The fact that Leatherberry when rudely running past the officer pushed him, was sufficient to support an assault conviction. The officer therefore had probable cause to arrest the appellant at that moment. "The legality of an arrest is measured by the existence of probable cause at the time thereof, not by subsequent events which may lead to the release of the person arrested from police custody either immediately or ultimately." *Wilson v. State,* 2 Md. App. 210, 214, 233 A. 2d 817; therefore, the fact that Leatherberry was not convicted of assault at the trial would not affect the fact that the police officer had probable cause to arrest him as he fled from the store.

When a policeman has reasonable grounds to believe that a felony has been committed and that the person who was arrested had committed the felony, he may arrest without a warrant. *Boone v. State,* 2 Md. App. 479, 481, 235 A. 2d 567. In the case at bar the appellant had assaulted the police officer so that there was reasonable ground for the officer to arrest the appellant without a warrant for a felony.[1] If the arrest was legal and the

---

1. Md. Code Art. 27 § 11B states that:

"(a) It is unlawful for any person to beat, strike or otherwise assault a policeman while the said policeman is acting in his official capacity.

"(b) Violation of this section is a felony punishable by imprisonment not to exceed five years.

"(c) This section is only applicable to Baltimore City and Alleghany County."

search was incident to the arrest, there is no illegality involved, *Michaels v. State,* 2 Md. App. 424, 428, 234 A. 2d 772.[2] It should be noted, of course, "an officer is not required to have sufficient evidence to convict at the time he makes his arrest but only *probable cause,* which has been described as something more than suspicion, but less than that required for a conviction," *Terrell v. State,* 3 Md. App. 340, 239 A. 2d 128. Also it does not matter that the goods seized were not connected with the crime for which the appellant was arrested, *Gamble v. State,* 2 Md. App. 271, 276, 234 A. 2d 158.

*Judgment affirmed.*

2. The fact that the search was continued at the police station would be immaterial. In *Abel v. United States,* 362 U. S. 217, 238-39, 80 S. Ct. 683, 697, 4 L. Ed. 2d 1019 the Supreme Court of the United States stated:

"Items (3), (4), and (5), a birth certificate for 'Emil Goldfus' who died in 1903, a certificate of vaccination for 'Martin Collins,' and a bank book for 'Emil Goldfus' were seized, not in petitioner's hotel room, but in a more careful search at I. N. S. headquarters of the belongings petitioner chose to take with him when arrested. This search was a proper one. The property taken by petitioner to I. N. S. headquarters was all property which, under *Harris,* was subject to search at the place of arrest. We do not think it significantly different, when the accused decides to take the property with him, for the search of it to occur instead at the first place of detention when the accused arrives there, especially as the search of property carried by an accused to the place of detention has additional justifications, similar to those which justify a search of the person of one who is arrested."