RONALD GRAY *v.* STATE OF
MARYLAND

[No. 132, September Term, 1970.]

*Decided December 1, 1970.*

. The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Stephen A. Tarrant, Assistant Public Defender of Harford County,* with whom was *Harry C. Engel, Jr., Public Defender of Harford County,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The conviction of Ronald Gray of the robbery of Howard M. Smith, Sr., rendered by a jury in the Circuit Court for Harford County, and the sentence of 10 years imposed thereon are affirmed. His conviction of assaulting and beating Mr. Smith and the consecutive sentence of 5 years imposed thereon are vacated; in the circumstances here the offense of assault and battery merged into the conviction of robbery.

## MERGER OF OFFENSES

Robbery, a common law offense in Maryland, is grand or petit larceny from the person of another by violence.[1] The violence may be actual as by the application of physical force or constructive as by the putting in fear. It is only in the absence of actual violence that putting in fear is required. Conversely, if actual violence accompanies the larceny, it is not necessary that the victim be placed in fear. *Giles v. State,* 8 Md. App. 721, 723. See *Wiggins v. State,* 8 Md. App. 598, 603, note 2. To constitute robbery, the actual or constructive violence must precede or accompany the larceny. *Cooper v. State,* 9 Md. App. 478,

---

1. Robbery with a deadly weapon is not an offense separate and distinct from robbery. Code, Art. 27, § 488 merely provides a more severe penalty for the crime of robbery when committed with a deadly weapon. *Darby v. State,* 3 Md. App. 407, 412-414.

480. See *Douglas v. State*, 9 Md. App. 647, 653. "Blackstone, to emphasize that for robbery the larceny must be accomplished by violence or intimidation, said: 'for if one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear, this is no robbery, for the fear is subsequent * * *.' " *Perkins on Criminal Law*, 2d Ed., p. 283, quoting 4 Bl. Comm. 242. So if the two transactions are essentially distinct— if subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by violence, the thief would be guilty of larceny and assault, but not robbery. In other words if the violence, actual or constructive, is part of the *res gestae* of the larceny the offense is elevated to the category of robbery. Id., at 284. See *Clark & Marshall, Law of Crimes*, 7th Ed., § 12.13, pp. 890-891; 2 *Wharton's Criminal Law and Procedure* (Anderson), § 559, pp. 263-265.

This Court has consistently applied the modern doctrine of merger of offenses, the test being whether one crime necessarily involves the other. *Chittum v. State*, 1 Md. App. 205. So if an accused is convicted of both the robbery and the assault and battery of a person and the proof of the assault and battery was necessary to establish the force required to constitute robbery the assault and battery would merge into the robbery. We recognize that a person should not be twice punished for the same acts.[2] This would come to pass if the assault and battery were part of the *res gestae* of the larceny.

---

2. Of course the doctrine of merger is applicable only when there has been a conviction of each offense; it has no application where there is one trial on multiple offenses except to preclude multiple convictions of merged offenses. *Beard v. State*, 4 Md. App. 685; *Bryant v. State*, 4 Md. App. 572. See *Dorsey v. State*, 9 Md. App. 80. On particular factual circumstances we have held that assault did merge into a robbery conviction, *Price v. State*, 3 Md. App. 155; that it did not merge, *Wilkins v. State*, 5 Md. App. 8 and *Davis v. State*, 4 Md. App. 492; that assault and battery did merge into a robbery conviction, *Bromwell and Cornish v. State*, 8 Md. App. 382, adopting as reasons therefor those set forth in the concurring opinion in *Massey v. State*, 7 Md. App. 615, 618-619; and that assault and battery did not merge into a robbery conviction, *Cottrell v. State*, 1 Md. App. 520 and *Powell v. State*, 1 Md. App. 495.

Howard M. Smith, Sr., "a retired government agent," helped his wife operate a "little grocery store" located on the premises in which they lived in Havre de Grace. On 29 July 1968, about 5:30 P.M., his wife was in the kitchen with a neighbor and he was reading a paper in the living room. The opening of the door to the store activated a device which sounded a buzzer in the kitchen. Smith heard the buzzer "go off" and went into the store. At first he did not see anyone—"as a rule some of the smaller kids, they hide in back of the counter"—so he walked back of the counter toward the cash register. He saw two people. One "was creeping out there" towards the store entrance. The other was "stooped down" in front of the cash register and he "raised up and conked me." Smith was hit twice about the head with what appeared to be a piece of garden hose stuffed with lead. He was knocked unconscious by the blows and the next thing he remembered was being in the hospital. "My both jaws were broken and I couldn't see, couldn't swallow." He spent three weeks in the hospital. Over $200 was stolen. Mrs. Smith went into the store from the kitchen when she heard the continuous buzzing of the warning device. Her husband was on the floor unconscious; the robbers had fled.

We find this evidence sufficient in law to establish the *corpus delicti* of the robbery.[3] We so find because we believe that it was a rational inference that the assault on Smith and the beating of him constituted the violence which accompanied the larceny of the money and elevated the offense to robbery. This was the only assault and battery of Smith shown, and it was necessarily part of the *res gestae* of the larceny. Therefore upon conviction of the robbery, the assault and battery merged therein and the judgment under the 5th count of the indictment must

---

3. At the close of all the evidence the court granted a motion for judgment of acquittal as to robbery with a deadly weapon, attempted robbery with a deadly weapon and assault with intent to steal, the 1st, 2nd and 4th counts respectively in the indictment. The case went to the jury on robbery (3rd count) and assault and battery (5th count).

be vacated. The result is that appellant is subject to a term of imprisonment of 10 years rather than 15 years.

## EVIDENCE OF IDENTIFICATION

Smith made a positive judicial identification of appellant as the felon who struck him. This evidence came in without challenge. On cross-examination it was elicited that he had made an identification of appellant from photographs shown him by the police while he was in the hospital. He said he only remembered seeing three pictures of the three people who were involved but he remarked that "I was just under the dope that they gave me for pain and I really never paid too much attention to them." On re-direct examination he said that he knew that appellant was the one who hit him and that there was no question at all about it.

Appellant called Sergeant Warner L. Taylor, of the Police Department in Havre de Grace. The officer said he did not show Smith photographs in the hospital but did show them to him on 4 September 1968. There were six photographs. "I showed him the photographs all at one time and he picked number one photograph as the—he said that that was the one that beat him. The subject's name on the photograph was Douglas McAndrew Brooks. He picked out photograph number six as the one that took the money from the cash register. Number six photograph was Ronald Gray. * * * I picked photographs out that were fairly close together." He obtained them from the police files and we think it obvious when he said he picked out those "that were fairly close together" that he meant those which depicted men who resembled each other. The officer described Smith's appearance in September: "He was still in a considerable amount of pain. Both sides of his jaw was still wired up at that time. A considerable amount of swelling had went down in his face, but his eyes were still—he gave the appearance of a severe beating." [4] On further examination of the officer it was clearly brought out that Smith had identified ap-

---

4. Taylor did not have all the photographs viewed by Smith with

pellant as being in the store when the robbery was committed.

Appellant now contends that the in-court identification of him by Smith was inadmissible because it was tainted by an illegal photographic identification procedure and because the State was unable "to reconstruct the original photographic identification." Not only was there no pre-trial motion to suppress the evidence now challenged and no objection when it was received, but there was no motion to strike it when it became apparent that there had been an extrajudicial identification from photographs. Therefore the question of the admissibility of the judicial identification is not before us. And there is no question presented as to admissibility of any extrajudicial identification since this was not introduced by the State as corroborative of the judicial identification or as independent substantive evidence of identification. See *Smith and Samuels v. State,* 6 Md. App. 59. That there had been an extrajudicial identification was properly brought out by appellant, but the facts and circumstances concerning it went only to the credibility of the identifying witness and to the weight of his judicial identification rather than its admissibility. The credibility of the witness and the weight to be given his judicial identification were matters for the jury.

Appellant did not make an issue below of the fact that the photographs had been lost. Not tried and decided below on the question of the admissibility of the judicial identification, the matter is not before us on appeal. Maryland Rule 1085. However, in the circumstances, we do not think that the loss of the photographs would compel the exclusion of the judicial identification. The evi-

him when he testified. It seemed that he was to attempt to find them and bring them to the court the next day. The next day he testified that he could not find them—"They are pictures from our mug files, our files in the Police Station. They're photographs of previous people that have been arrested in Havre de Grace. * * * We remodeled our evidence room and all the evidence was taken from the evidence room and put into the Chief's office and then when the evidence room was completed, it was taken back into the evidence room again and somewhere along the line these photographs have been lost."

dence adduced indicated that the photographic viewing procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and that it was legally conducted. And it may be, although we need not decide it, that the judicial identification was shown to have a source independent of the extrajudicial viewing in any event.

## THE ADMISSION OF THE STATEMENT OF A WITNESS

Appellant was jointly indicted with one Oran Thomas. He was separately tried and found not guilty at a bench trial had prior to the trial of appellant. At appellant's trial he was called to testify on behalf of the State. He said he went to Smith's store with appellant and a Ronnie Sconion on 29 July 1968 about 5:30 P.M. Sconion and appellant went in the store. He did not know why they went in the store and he left before they came out, going to the Duck — "The Duck in Youth Club on Revolution Street." Appellant and Sconion came to the Club and then the three of them went to Aberdeen by bus and caught a cab to Perryman where Sconion lived. They went to a shack in the woods and "we just counted the money." Thomas did not get any. Then they went to Sconion's house, remained about 25 minutes and went back to Havre de Grace. They went to a shed back of "this church" and hid some money. Thomas went home and was picked up by the police.

Sergeant Taylor testified for the State prior to the testimony of Thomas. He said he talked to Thomas. What Thomas said was not elicited by the State. On cross-examination defense counsel probed into the circumstances of the talk with Thomas. It was brought out on his inquiry that the officer talked to Thomas alone and later in the presence of Thomas' father; that before the father's arrival he denied being involved at all and continued to assert in the presence of his father that he knew nothing about what happened. There came a time, that same night, however, when he did admit being involved in the

crime, admitting the participation of three boys, including himself. On re-direct examination the officer testified without objection that Thomas admitted being involved in the crime and that he gave a written statement. He identified a document shown him by the State as the statement given, said that he asked the questions and that they were answered by Thomas and that the statement was the basis that he had that Thomas admitted being involved. The State offered the statement, apparently with respect to Thomas' involvement in the crime, the prosecutor stating, "I think it's a matter of interpretation which is up to the jury to decide." Appellant objected to it. The objection was overruled and the statement was admitted. It was read to the jury. The prosecutor asked Taylor, "This is the basis that you say he confessed to it." Taylor answered, "Yes, sir." [5]

Appellant was clearly attempting to attack Thomas' credibility by eliciting from Taylor on cross-examination that Thomas admitted being involved in the crime. Appellant, having brought up the issue, could not then object to the introduction of the statement made by Thomas on which Taylor based his assertion that Thomas admitted being involved. We agree that it was for the jury to decide in weighing the evidence and determining Thomas' credibility whether or not Thomas admitted being involved in the crime. The best evidence of what he admitted was what he said and the best evidence of what he said was the statement signed by him. We point out that Thomas was ultimately called by the State, testified without objection in substance to what was contained in the statement and was cross-examined at length by appellant. We find no reversible error in the admission of the statement. See *Shotkosky v. State,* 8 Md. App. 492; *Sutton v. State,* 8 Md. App. 285. Compare *Bruton v. United States,* 391 U. S. 123.

### THE ADMISSION OF TANGIBLE EVIDENCE

As part of its case the State introduced over objection a straight razor found at the scene of the crime by the

---

5. See Appendix A.

investigating officers. It was adduced that the razor was not the property of Smith. He said he had not seen it before the trial and Mrs. Smith said she had not seen it prior to the crime. We find it was admissible not only as a part of the crime scene but because of its probative value in establishing appellant's criminal agency.

The Ronnie Sconion said by Thomas to have entered the store with appellant was Ronald Edward Sconion.[6] He was called to testify on behalf of the State. He described the commission of the crime succinctly:

> "Well, me and Ronnie [Gray] come up behind the counter and Ronnie just hit the man and I went in the cash register and took the money and I told him to come on and we left and ran out of the store."

He was shown the razor by the prosecutor and was asked if he could identify it. He said: "That looks like I seen it before. I don't know for sure if it's the same one." He had seen it before "down the park * * * My brother had it first * * * And then Ronnie [Gray] asked to see it and then I guess he forgot to give it back to my brother or my brother forgot to ask him or something."

The real test of admissibility is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue should be admitted. *Stewart v. State,* 1 Md. App. 309, 317. As to the question of the connection between the defendant and the evidence, probability is the only requirement, and if there is any doubt, it goes to the weight and not to the admissibility of the evidence. *Hebb v. State,* 10 Md. App. 145. The razor went directly to a main issue, the criminal agency of appellant, and was relevant and material. In any event even the admission in evidence of any fact collateral to the main issue is ordinarily within the discretion of the trial court and all reasonable presumptions necessary to uphold its rulings will be indulged. *Stewart*

---

6. It seems from the transcript of the proceedings that he was tried under juvenile proceedings and committed to "Spring Grove."

*v. State, supra,* at 317. We hold that the lower court did not err in admitting the razor.

### THE RECORD TRANSMITTED ON APPEAL

In preparation for trial the prosecutor requested Sergeant Taylor to prepare "a plan showing the layout of the store." It was not to scale and merely represented "the general location of the various things in the store on the one side and the streets on the other" as of 29 July 1968. It was admitted in evidence expressly without objection and referred to from time to time in the examination of the witnesses. The index to the record sent to us states that this exhibit was "RETAINED." Appellant claims that he has been "precluded from full and meaningful review of his trial and conviction" because this exhibit was not transmitted with the record. We have held that it is the responsibility of the appellant to include in the record a transcript of all the testimony, Rule 1026 c 2, as well as all other matters and issues which he desires this Court to review on appeal. *White v. State,* 8 Md. App. 51, 54. See *Johnson v. State,* 9 Md. App. 327, 333-334; *Anderson v. State,* 9 Md. App. 532, 538.

In any event we can declare that we were in nowise hindered in our consideration of the questions presented on appeal by the absence of the exhibit omitted. We hold the failure to include it with the record is not ground for reversal in the circumstances.[7]

> *As to indictment no. 3502:*
> *Judgment under third count (robbery) affirmed;*
> *Judgment under fifth count (assault and battery) vacated, the offense thereunder merging into the conviction under the third count.*

---

7. It was suggested in oral argument before us that the exhibit was misplaced below and has not been found. If so, the record before us does not disclose it.

## APPENDIX A

### SUBJECT OR SUBJECT NOT UNDER ARREST

I, Oran Thomas, make the following statement freely and voluntarily to Cpl W. Taylor and Officer Osborne, who have told me they are Officers of Havre de Grace Police Department. Officer Cpl W. Taylor has told me that I do not have to make any statement or answer any questions and that anything I say can be used against me in court. No threats, force, or promises have been made to me to get me to make this statement, and I make it of my own free will.

Q. Oran Tell me in our own words what took place at approx 5:30 P M on 7-29-68 in Havre de Grace in the Vicinity of Wash & Girard St.

A. Ronald Sconion ~~you~~ myself and this other boy I don't know his name, we walked down to the store, I don't know name of the store, they Ronald & this other boy said they were going in side, & get something As I was going back down the St, and they hollered for me, I glanced back &kept on going. I went on to Aberdeen from there, When I came back from Aberdeen, the police picked me up.

Q. Oran did you see Ronald & the other boy go into the store.

A. Yes I saw them go in.

Q. Oran did you see them come out of the store.

A. No.

Q. Oran did you know they were going into the store to rob it.

A. No I did not.

   Cpl. W. Taylor (signed)
   Off. W. H. Osborne (signed)
   Oran T. Thomas (signed)