HENRY LEE WOODS, JR. *v.* STATE OF MARYLAND

[No. 468, September Term, 1971.]

*Decided March 7, 1972.*

628

The cause was argued before ORTH, MOYLAN and POWERS, JJ.

*Walter H. Madden* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Thomas L. Craven, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

### The Crime of Assault and The Crime of Battery

The common law crime of assault was described by Blackstone[1] as "an attempt or offer[2] to beat another, without touching him * * *." The same author wrote that the crime of battery "* * * is the unlawful beating of another."

---

1. Blackstone's *Commentaries on the Laws of England,* Volume III, dealing with private wrongs, at page 120. In Volume IV of the same work, discussing assaults, batteries and wounding as public wrongs, Blackstone says, at page 216: " * * * I have nothing further to add to what has already been observed in the preceding book of these Commentaries; when we considered them as private wrongs, or civil injuries * * *".

2. In his work on *Criminal Law* (Second Edition) Professor Perkins points out that some misunderstanding has arisen from the use of the word "offer" by Blackstone and other writers. He says, at pages 117 and 118: "The word 'offer', it is said, signifies a threat that places the other in reasonable apprehension of receiving an immediate battery. It would be a mistake, however, to assume that the word carried any such significance when it first appeared in the definition of this offense. In one of its meanings, 'offer' is a synonym of 'attempt.' Duplicity of expression was no stranger in the early law, and when the phrase was first used in this definition, it was as if it had been worded 'an attempt or effort.' "

The American Heritage Dictionary, among several definitions of the verb "offer", includes: To exhibit an intention; attempt: To try to inflict upon. As a noun, "offer" is defined in part as: An attempt; a try: A show of intention.

In his work on *Crimes and Criminal Procedure*, (Second Edition) Hochheimer, in § 254, defines assault:

"Any attempt unlawfully to apply the least actual force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension [3] in another, that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention."

Battery is defined by Hochheimer in § 255:

"The least actual force unlawfully applied to the person of another constitutes a battery. Force is applied, when there is any touching of the person or anything attached to the person by the aggressor or by any person or thing set in motion by him."

Clark & Marshall, *Law of Crimes* (Seventh Edition) separately defines the two crimes, saying, in § 10.15:

"A simple assault under common law is typified by an attempt or offer, with unlawful force or violence, to do a corporal hurt to another."

and in § 10.19:

"Any unlawful injury whatsoever, however slight, actually done to the person of another,

---

**3.** Whether apprehension of impending harm on the part of the potential victim is a necessary ingredient of assault in tort law, we need not and do not decide. And while such apprehension may be present in most criminal assaults, it is not always present, and therefore it cannot be a required element. If a person be struck from behind, or by stealth or surprise, or while asleep, he is certainly the victim of a battery. But if we accept the oft-repeated statement that every battery includes or is preceded by an assault, and if there could be no assault without premonitory apprehension in the victim, then it could be argued that there was no battery. That is not the law. See 6 Am. Jur. 2d, Assault and Battery, § 4, *State v. Adamo*, 9 N. J. Super. 7, 74 A. 2d 341, *State v. Godfrey*, 17 Or. 300, 20 P. 625, *Nelson v. State*, (Fla. App.) 157 So. 2d 96.

directly or indirectly, in an angry, revengeful, rude, or insolent manner is a battery. Every battery includes an assault, so that on an indictment for assault and battery one may be convicted of an assault only."

To the same general effect are the definitions of the two crimes, given *separately* in each text, in 6 Am. Jur. 2d, Assault and Battery, §§ 3 and 5, 6 C.J.S. Assault and Battery, § 57 a and b, *Perkins on Criminal Law* (Second Edition), pp. 107 and 114, and Wharton's *Criminal Law and Procedure*, §§ 329 and 337. In 6 C.J.S. Assault and Battery, § 57, it is said, "There is a clear and well defined legal distinction between an assault and an assault and battery. They are separate and distinct offenses under the law." We must take the term "assault and battery" as used here, as well as in many other texts, judicial decisions and statutes, as meaning, more precisely, "battery, with its included assault".

The appellate courts of Maryland have had relatively little occasion to concern themselves with the definitions of assault and of battery, or with the close relation but clear distinction between the two crimes. In *Handy v. Johnson*, 5 Md. 450 (1854) the Court of Appeals said at page 465:

"Where an assault is charged the authorities show that the jury are to decide whether there was any intention to do any violence or injury; but the authorities also establish, that if in a threatening and rude or angry manner a man points a sword, or fork, at another, or shakes his fist in the face of the other, within striking distance, attended with a present ability to strike, although no stroke is given, such act is an assault, notwithstanding the failure to strike."

In *Lamb v. State*, 67 Md. 524, 10 A. 208 (1887), the Court of Appeals said in an illustrative dictum, at page 534:

"A battery is defined to be the unlawful beating

of another; and an assault is an attempt to beat another without touching him."

The Court of Appeals has more recently dealt with assault or battery or both in *Yantz v. Warden,* 210 Md. 343, 123 A. 2d 601, in *Kellum v. State,* 223 Md. 80, 162 A. 2d 473, in an opinion by Chief Judge Brune, containing a review of text and case authorities on the subject, in *Hobbs v. Warden,* 223 Md. 651, 163 A. 2d 331, and in *Veney v. State,* 251 Md. 159, at pp. 176 and 177, 246 A. 2d 608.

This Court has discussed or referred to the elements of one or both of the crimes in a number of cases, including *Weddle v. State,* 4 Md. App. 85, 241 A. 2d 414; *Leatherberry v. State,* 4 Md. App. 300, 242 A. 2d 599; *Williams v. State,* 4 Md. App. 643, 244 A. 2d 619; *Price v. State,* 5 Md. App. 127, 245 A. 2d 600; *Lyles v. State,* 10 Md. App. 265, 269 A. 2d 178; and *Ott v. State,* 11 Md. App. 259, 273 A. 2d 630.

We see no need to attempt to synthesize from these authorities any comprehensive definition of assault or of battery. The meaning of both is clear enough. Our purpose has been to show that assault is one crime and battery is another. There is no single crime properly called *assault and battery.* When the term is used, either it refers to two crimes, or it refers to the crime of battery, and when it does the word assault is superfluous.

In a number of cases we have discussed the principles governing merger of a lesser included offense into a completed greater offense. With particular reference to merger of assault or battery into robbery, of which either or both are component elements, see the concurring opinion of Judge Orth in *Massey v. State,* 7 Md. App. 615, 256 A. 2d 614, at pages 618 and 619, and the opinion written for this Court by Judge Orth in *Gray v. State,* 10 Md. App. 478, 271 A. 2d 390, at pages 480-481. We have agreed with the statement in Clark & Marshall, *Law of Crimes, supra,* that on an indictment for assault and battery one may be convicted of an assault only.

Just as the assault or the battery which precede a larceny and combine with it to make the consummated crime a robbery, lose their identity as separate crimes when the greater crime of robbery is committed, so an assault which precedes a battery loses its identity as a separate crime when the greater crime of battery is committed.

Thus it is clear that battery stands in the law as a separate common law offense, made up of an attempt combined with the success of that attempt. One who unlawfully causes force to be applied, directly or indirectly, to the person of another, may be indicted, tried, convicted and sentenced for the crime of battery.

### The Present Case

Henry Lee Woods, Jr. was convicted by a jury in Montgomery County of assault upon one individual, assault and battery of another, and of shoplifting. After sentences were imposed by Judge Irving A. Levine, he appealed.

In the early afternoon of January 9, 1971, Joseph Robert Gauthier was performing his duties as a major appliance salesman in the J. C. Penney Store in Silver Spring. He noticed appellant and a companion standing at a rack where stereo tapes were displayed. He observed what he felt were suspicious movements, and saw that the rack of cassettes was about half empty. He approached "to see what actually was going on", and as he did so, appellant and his companion headed towards the front door. Mr. Gauthier called to Harold F. Evans, acting manager of the department, to head them off. Appellant's companion was carrying a shopping bag, which he dropped before the pair reached the door.

Mr. Evans attempted to block the exit of the two men, and appellant produced an object that resembled a fountain pen and squirted a fluid into the face of Mr. Evans, rendering him temporarily unable to see. An alarm was set up outside, and as the men fled, Officer Warren C. Crane, of the Montgomery County Police, took up the

chase. The men entered a car on a nearby parking lot, as Officer Crane approached the left front of the car. Appellant, driving, ignored the officer's command to stop, and started the car forward. Officer Crane jumped to his right. He testified, "If I had stayed in the position I would have been run over." He grabbed the door handle of the car and held on for a few feet, but could not maintain his hold. Appellant was caught by another police car after a chase into the District of Columbia.

The shopping bag contained some clothing, and sixty-one stereo tape cassettes, identified by Mr. Gauthier as the property of the Penney store. He said their value was $5.99 each. The police took custody of the shopping bag and contents, inventoried and listed the cassettes and the price marked on each, photographed them, and later returned them to the store.

An indictment thereafter returned by the grand jury charged appellant in seven counts, entitled in the indictment as follows:

First Count—Assault with Intent to Murder
Second Count—Assault and Battery
Third Count—Assault
Fourth Count—Shoplifting of Goods Over the Value of One Hundred Dollars
Fifth Count—Shoplifting of Goods Under the Value of One Hundred Dollars
Sixth Count—Assault and Battery
Seventh Count—Assault.

The first three counts involved offenses against Warren C. Crane, the police officer, and the last two charged offenses against Harold F. Evans, Penney's acting manager. The second count charged that the defendant, "in and upon one Warren C. Crane, did then and there beat, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State". The sixth count contained identical wording, except that the named victim was Harold F. Evans. Before any evidence was taken, the

State moved to amend the second and sixth counts by inserting, before the words, "did then and there beat", the words, "unlawfully did make an assault and". Over objection, leave to amend was granted.

At trial, the court granted appellant's motion for judgment of acquittal as to the second count, and denied the motion as to all other counts. The jury returned verdicts of guilty on the third, fourth and sixth counts.

Appellant makes several contentions here. They are:

1. The amendments to the second and sixth counts were of substance, not merely of form, and should not have been allowed.

2. Even if properly allowed, the amendments required that appellant be rearraigned on the two charges as amended.

3. It was error to admit in evidence the photographs of the stolen stereo tape cassettes.

4. It was error to admit in evidence the tabulated list made by the police officer of the values of the cassettes.

5. The evidence was insufficient to show that appellant committed an assault upon the police officer.

6. The court's instructions regarding possible verdicts prohibited the jury from acquitting the appellant of assault.

7. The sentence of seven years for assault amounted to cruel and unusual punishment.

### 1. and 2.

What we have said about the common law crime of battery shows that the sixth count of the indictment as originally drawn adequately charged that offense. Appellant's argument that there is no such crime in Maryland as battery alone is in error. Addition of the words, "did make an assault" merely specified, separately, one of the ingredients of the crime of battery. Aside from being unnecessary, the addition involved form only, not substance. Maryland Rule 714 a.

Absence of the technical word "unlawfully" from the original count was of no consequence, because the count

charged facts which constitute a crime. Addition of the word "unlawfully" by amendment was not a change of substance.

There was no error in allowing the amendment, and there was no requirement that appellant be rearraigned after the amendment was allowed.

### 3.

Appellant seems to argue that the photographs of the tapes were improperly admitted because the tapes themselves were the best evidence. We held squarely in *Lamot v. State,* 2 Md. App. 378, 234 A. 2d 615 and *Wells v. State,* 8 Md. App. 510, 261 A. 2d 181, that the best evidence rule applied to writings or other documentary evidence, but has never been applied to chattels or material objects. Appellant also contends that the photographs did not fairly depict the individual tapes, and their individual identity could not be determined. The names of performers or musical selections printed on the labels were of no significance, and the photographs were merely cumulative evidence of the fact that a substantial number of stereo tape cassettes was involved in the crime. There was no error in their admission.

### 4.

The adding machine tape made by Officer Crane of the amounts shown on the price tags on the cassettes, along with his list of the titles on the cassettes, was received in evidence. We agree with Judge Levine that the records were admissible not only because Officer Crane made them in the ordinary course of his duties, but also because they merely recorded what he had personally observed. Appellant argues that the information as to prices was hearsay as it related to the value of the goods stolen. Both Mr. Gauthier and Mr. Evans testified to the number of tapes taken, and to their value.

### 5.

The contention that the evidence was insufficient to show an assault upon Officer Crane is without merit. The

officer testified to his attempt to stop the car, and that appellant drove toward him. He said that he jumped out of the way, and that if he had stayed in his position, he would have been run over. We have reviewed above the nature of the crime of assault. This evidence was sufficient to support a finding of guilt, *Williams and McClelland v. State,* 5 Md. App. 450, 247 A. 2d 731, and the court's denial of the motion for judgment of acquittal as to the third count was correct.

### 6.

We have examined the entire advisory instruction which Judge Levine gave to the jury. His summary of possible verdicts must be read in conjunction with his clear statement to the jury that the defendant could be found not guilty of each of the six counts submitted to it. No exception was taken to the instructions. Maryland Rule 756 f requires that such objection be made before the jury retires. There was no plain error, of which we may take cognizance and correct. Rule 756 g, *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62.

### 7.

Appellant argues, somewhat abstractly, that the sentence of seven years imposed for his assault upon Officer Crane may be a cruel and unusual punishment. He suggests that since the Legislature has never seen fit to do so by statute, this Court should establish some kind of standard for sentences in assault cases. If we were so inclined, we lack the power to do so. In *Roberts v. Warden,* 206 Md. 246, 111 A. 2d 597, Judge (now Chief Judge) Hammond, speaking for the Court of Appeals, discussed fully a contention that a sentence imposed after a plea of guilty to simple assault should be held to impose a cruel and unusual punishment and quoted from *Mitchell v. State,* 82 Md. 527, 34 A. 246, where it was said:

> "Even where the law confides to the Judge the imposition of the sentence without definite limit, it still may be possible to violate the Declara-

638

tion of Rights. If the punishment is grossly and inordinately disproportionate to the offence so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence."

See also *Weddle v. State*, 4 Md. App. 85, 90, 241 A. 2d 414.

There is nothing in this record to indicate that the sentence was dictated, not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive.

*Judgments affirmed.*