499 A.2d 959

**John G. HARROD**

v.

**STATE of Maryland.**

**No. 157, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 8, 1985.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Thomas E. Hickman, State's Atty. for Carroll County and W. Samuel Truette, Asst. State's Atty. for Carroll County, on brief, Westminster), for appellee.

Submitted before WEANT, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

We are called upon in this appeal to decide, *inter alia,* whether a person can be convicted of assaulting another who has suffered no harm and was never aware of the alleged assault. Appellant John G. Harrod was charged with two counts of assault and two counts of carrying a deadly weapon openly with intent to injure. He was convicted of these offenses on December 11, 1984, following a trial without a jury in the Circuit Court for Carroll County (Lerner, J., presiding), and sentenced on January 21, 1985, to two terms of two years' imprisonment for the assault convictions and two terms of one year's imprisonment for the weapons convictions, all sentences to run concurrently. On appeal to this court, appellant presents three questions:

I.  Was the evidence sufficient to sustain the charge of assault upon James Christopher Harrod?

II.  Was the evidence sufficient to sustain the charges of carrying a weapon with intent to injure?

III.  Was the sentence imposed based upon an improper factor?

It will be of little solace to appellant that we answer the first question in his favor, for our response to the second and third questions leave his ultimate period of incarceration unchanged.

## I.

The common law crime of assault encompasses two definitions: (1) an attempt to commit a battery or (2) an unlawful intentional act which places another in reasonable apprehension of receiving an immediate battery. *Taylor v. State*, 52 Md.App. 500, 450 A.2d 1312 (1982), *cert. denied*, 295 Md. 691 (1983); *Woods v. State*, 14 Md.App. 627, 288 A.2d 215, *cert. denied*, 266 Md. 745 (1972); R. Perkins and R. Boyce, *Criminal Law* 159 (3d ed. 1982). The facts in the instant case present this court with an excellent opportunity to explain the distinctions between these two different types of assault.

The assault charges arose out of a confrontation among appellant, his wife Cheryl, and her friend Calvin Crigger. The only two witnesses at trial were appellant and Cheryl Harrod.

Cheryl testified that on September 15, 1983, Calvin Crigger came over to visit when she thought appellant had gone to work; that "all of a sudden [appellant] came out of the bedroom with a hammer in his hand, swinging it around, coming after me and my friend [Calvin]"; that Calvin ran out of the house and down the steps; that appellant "had thrown the hammer over top of [Christopher's] port-a-crib in the living room, and it went into the wall"; that appellant then reentered the bedroom and returned with a five-inch blade hunting knife; that appellant told Cheryl that he was going to kill her and that, if she took his daughter away from him, he was going to kill Christopher; that appellant put the knife into the bannister near Cheryl's arm; that appellant followed Cheryl out to Calvin's car and "went after Calvin, going around and around the car."

Appellant testified that he missed his ride to work that day; that he came back home around 10:00 a.m. and went to

sleep in a back room; that he was awakened by Calvin's deep voice; that appellant picked up his hammer and, walking into the living room, told Calvin to leave; that Cheryl told Calvin he didn't have to leave; that he then told Calvin, "Buddy, if you want your head busted in, stand here; if you want to be healthy and leave, go." Appellant said that Calvin just stood there, so he swung the hammer, Calvin moved his head back, and the hammer struck the wall over Christopher's crib, which was near the door.

In rendering its verdict, the court stated:

And, the Court finds beyond a reasonable doubt and to a moral certainty that Mr. Harrod ... came after [Cheryl] and ... Calvin; and that Mr. Harrod came out of his room swinging a ... hammer, and ultimately threw it, not too far from the child, Christopher, and that he went after both Cheryl and Calvin, down the steps with a knife, with a blade of about four to five inches. The Court finds that he is guilty of two counts of Carrying a Deadly Weapon; that is the knife and the hammer; and, also two counts of Assault; one against Cheryl and one against the minor child.

. . . . .

Defense counsel inquired of the court: "On the second count of the Information, is the Court finding specific intent on behalf of the Defendant to injure his child?" The court responded, "Yes. Threw that hammer within a very short distance—sticking it—it was still sticking in the wall."

### A. *Two Types of Assault*

Appellant contends that there was insufficient evidence to demonstrate that he harbored a specific intent to injure Christopher when he threw the hammer. Further, he notes that there was no evidence that Christopher was injured by the hammer or that he was even aware that a hammer was thrown. Therefore, appellant claims that the trial court's finding that he committed a criminal assault upon Christopher was clearly erroneous. We agree for the reasons set forth below.

In reviewing a criminal conviction, we must affirm if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980). The weight of the evidence and the credibility of witnesses are, in a non-jury trial, for the judge's determination and will not be disturbed on appeal unless clearly erroneous. *Rettman v. State,* 15 Md.App. 666, 292 A.2d 107 (1972). It is necessary, therefore, that the essential elements of assault be determined.

As we noted *supra,* an assault "is committed when there is *either* an attempt to commit a battery *or* when, by an unlawful act, a person is placed in reasonable apprehension of receiving an immediate battery." *Taylor v. State, supra,* 52 Md.App. at 504, 450 A.2d 1312 (emphasis added). These two types of assaults—*attempted battery* and *putting another in fear*—are indeed two distinct crimes that have been inadvertently overlapped and confused. One commentator explained this confusion:

> In the early law the word "assault" represented an entirely different concept in criminal law than it did in the law of torts. As an offense it was an attempt to commit a battery; as a basis for a civil action for damages it was an intentional act wrongfully placing another in apprehension of receiving an immediate battery. The distinction has frequently passed unnoticed because a misdeed involving either usually involves both. If, with the intention of hitting X, D wrongfully threw a stone that X barely managed to dodge, then D would have been guilty of a criminal assault because he had attempted to commit a battery, and he would also have been liable in a civil action of trespass for assault because he had wrongfully placed X in apprehension of physical harm.

> Some commentators have been so imbued with the tort theory of assault that they have had difficulty in realizing

that in the early law a criminal assault was an attempt to commit a battery and that only.

Perkins and Boyce, *Criminal Law* 159 (footnote omitted).

This confusion is apparent in the State's brief. There, appellee, quoting from *Taylor v. State,* 52 Md.App. at 505, 450 A.2d 1312, noted that "[i]t is not necessary to constitute an assault that any actual violence be done to the person. If the party threatening the assault has the ability, means, and apparent intention to carry his threat into execution, it may in law constitute an assault." (Emphasis removed.) Appellee then goes on to cite dictum from this court's decision in *Woods v. State,* 14 Md.App. 627, 288 A.2d 215 (1972). There, we stated in a footnote:

> Whether apprehension of impending harm on the part of the potential victim is a necessary ingredient of assault in tort law, we need not and do not decide. And while such apprehension may be present in most criminal assaults, it is not always present, and therefore it cannot be a required element.

*Id.* at 630, n. 3, 288 A.2d 215. The problem here is that the language in *Taylor* derived from an examination of tort theories of assault, while the language in *Woods* is based on the criminal attempted battery theory.

### B. *Attempted Battery*

■ The language in *Woods* supports the proposition that in an attempted battery-type assault, the victim need not be aware of the perpetrator's intent or threat.

> If a person be struck from behind, or by stealth or surprise, or while asleep, he is certainly the victim of a battery. But if we accept the oft-repeated statement that every battery included or is preceded by an assault, and if there could be no assault without premonitory apprehension in the victim, then it could be argued that there was no battery. That is not the law. See Am.Jur.2d, Assault and Battery, § 4, *State v. Adamo,* 9 N.J.Super. 7, 74 A.2d 341, *State v. Godfrey,* 17 Or. 300, 20 P. 625, *Nelson v. State,* (Fla.App.) 157 So.2d 96.

*Woods,* 14 Md.App. at 630, n. 3, 288 A.2d 215.  In other words, because there may be committed a battery without the victim first being aware of the attack, an attempted battery-type assault cannot include a requirement that the victim be aware.  *See also* R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* §§ 4.2, 4.5 (1983); *Wharton's Criminal Law* §§ 179–80 (14th ed. 1979).

### 1.  *Specific Intent*

■ The facts in the case *sub judice* do not support a finding that appellant committed an attempted battery towards the infant, Christopher.  An attempt to commit any crime requires a specific intent to commit that crime.  Perkins and Boyce, *Criminal Law* 637; W. LaFave & A. Scott, *Criminal Law* § 59 (1972).  An attempted battery-type assault thus requires that the accused harbor a specific intent to cause physical injury to the victim, *Id.* at § 82, and take a substantial step towards causing that injury.  *See Young v. State,* 303 Md. 298, 493 A.2d 352 (1985).

Nowhere does the record indicate that appellant threw the hammer with the specific intent to injure Christopher.  The court expressly stated that it found specific intent on behalf of appellant because he "[t]hrew that hammer within a very short distance" of the child.  The court here is merely inferring a criminal intent from reckless or negligent acts of the appellant.  This is not sufficient, *see* LaFave & Scott, *supra,* at 610, especially where all of the evidence tends to the contrary:  that appellant's intent was to injure Calvin.

### 2.  *Transferred Intent*

■ An additional question raised by the parties in the briefs is whether the necessary specific intent as against Christopher could derive from the specific intent toward Calvin; in other words, did the intent to injure Calvin *transfer* to Christopher?  This doctrine of "transferred intent" was explained by the Court of Appeals in *Gladden v. State,* 273 Md. 383, 330 A.2d 176 (1974):

"[I]f one intends injury to the person of another under circumstances in which such a mental element constitutes *mens rea,* and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate." In such cases all the components of the crime are present. The psychical element which consists of a certain general mental pattern is not varied by the particular person who may be actually harmed. *Id.* at 404, 303 A.2d 176.

*Gladden,* as well as all of the cases cited in that opinion, involved an attempt to kill one person, but resulted in the death or injury of another, unintended victim. In every case cited in *Gladden,* the third party to whom the intent was "transferred" was in fact injured. The Court of Appeals expressly held that, under the doctrine, "the *mens rea* of a defendant as to his intended victim will carry over and affix his culpability *when such criminal conduct causes the death of an unintended victim."* 273 Md. at 405, 330 A.2d 176 (emphasis added).

By illustration, Professor Perkins explains the logic underlying the limited application of this doctrine:

If, without justification, excuse or mitigation D with intent to kill A fires a shot which misses A but unexpectedly inflicts a non-fatal injury upon B, D is guilty of an attempt to commit murder—but the attempt was to murder A whom D was trying to kill and not B who was hit quite accidentally. And so far as the criminal law is concerned there is no transfer of this intent from one to the other so as to make D guilty of an attempt to murder B. Hence, an indictment or information charging an attempt to murder B, or (under statute) an assault with intent to murder B, will not support a conviction if the evidence shows that the injury to B was accidental and the only intent was to murder A.

Perkins, *Criminal Law* 826 (2d ed. 1969) (footnote omitted).

The closest case we have found to support the rule that the doctrine does not apply absent actual injury is *State v.*

*Martin,* 342 Mo. 1089, 119 S.W.2d 298 (1938). In *Martin,* the defendants were charged with assault upon Lloyd De-Casnett, with the intent to maim. The evidence in that case showed that the defendants threw a sulphuric acid-filled light bulb at a vehicle in which DeCasnett was a passenger. However, there was no evidence that the defendants knew that DeCasnett was in fact there, while there was ample evidence that they were aware of other persons in the target vehicle. The Missouri court considered the common law notion in homicide cases "that a constructive intent follows the bullet," [1] but stated, "it cannot be the law in a case like this *where no one was hurt,* and the State's case rests solely on the overt act of throwing the acid-filled bulb and the felonious intent to be deduced therefrom." *Martin, supra,* at 302 (emphasis added). The court went on to reverse the conviction for assault with intent to maim DeCasnett, because, although the record evidence demonstrated a felonious intent to injure a passenger in the car, it did not appear that DeCasnett was the object of that intent.

To extend the doctrine of transferred intent to cases where the intended victim is not harmed would be untenable. The absurd result would be to make one criminally culpable for each unintended victim who, although in harm's way, was in fact not harmed by a missed attempt towards a specific person. We refuse, therefore, to extend the doctrine of transferred intent to cases where a third person is not in fact harmed.

This is the situation before us in the instant case. The record indicates that appellant swung a hammer which struck the wall "not too far from" Christopher. Significantly, there is no evidence that Christopher was harmed. Further, the weight of the evidence shows that appellant's specific intent, if any, was to injure Calvin, not Christopher.

---

1. *Cf. Gladden v. State,* 273 Md. at 397, 330 A.2d 176; "Some courts succinctly analogize the doctrine by stating that 'the intention follows the bullet' ... or 'the malice was transferred or followed the bullet.'" (Citations omitted.)

Why the State charged appellant with assaulting Christopher, rather than Calvin, we will not speculate. There is clearly insufficient evidence to find that appellant committed an attempted battery-type assault upon Christopher.

### C. *Assault by Placing One in Fear*

■ There is likewise insufficient evidence that appellant, by an unlawful intentional act, placed Christopher in reasonable apprehension of receiving an immediate battery. By definition the victim must be aware of the impending contact. *Wharton's Criminal Law* § 180; LaFave & Scott, *Criminal Law* § 82 at 611. *See United States v. Bell,* 505 F.2d 539 (7th Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d 442 (1975); *United States v. Rizzo,* 409 F.2d 400 (7th Cir.1959); *State v. LaMere* (Mont.) 621 P.2d 462 (1980); *State v. Barry,* 45 Mont. 598, 124 P. 775 (1912). This is consistent with the tort theory of assault. W. Prosser, *Law of Torts* § 10 (4th ed. 1971) ("Since the interest involved is the mental one of apprehension of contact, it should follow that the plaintiff must be aware of the defendant's act at the time, and that it is not an assault to aim a gun at one who is unaware of it."). *See Restatement (Second) of Torts* §§ 21–22 (1966).

There is no evidence in the record before us that Christopher was in fact aware of the occurrences in his home on the morning in question. Therefore, there was insufficient evidence to find appellant guilty of the putting victim in fear-type assault.

Because the trial court was clearly erroneous in finding appellant guilty of an assault on Christopher, we must reverse that conviction.

## II.

Appellant's next contention is that there was insufficient evidence to convict him of the weapons charges. Maryland Ann.Code Art. 27, § 36 (1982 and Cum.Supp.1985) states in pertinent part:

"Every person who shall wear or carry any dirk knife, bowie knife ... or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon ... openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor...."

In this appeal, appellant asks that we consider an exception mentioned in another statute,[2] and interpret § 36 as not applying to the act of carrying weapons inside the home. We decline to adopt this strained interpretation.

■ The Court of Appeals recently reiterated some of the basic rules of statutory interpretation:

The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of the enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly.

*City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984). Moreover, where a statute expressly provides for certain exclusions, others should not be inserted. *Pennsylvania Nat'l Mutual v. Gartelman,* 288 Md. 151, 156, 416 A.2d 734 (1980). The language of § 36 is clear and we need not look elsewhere to ascertain its intent. Appellant's

---

**2.** Appellant cites us to Art. 27, § 36B, which proscribes the wearing, carrying or transporting of a handgun, whether or not concealed. Subsection (c)(4) of that statute states:
"Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun within the confines of real estate owned or leased by him or upon which he resides...." Section 36 expressly excludes handguns, and is aimed at carrying weapons with an unlawful intent or purpose. Section 36B is aimed at curbing the flow of handguns in and around the State, and is therefore inapposite to the case *sub judice.*

conduct is expressly proscribed in the statute: he carried a deadly or dangerous weapon—first the hammer and then the hunting knife—openly with the announced purpose in each case of injuring a person in an unlawful manner. Subsection (d) provides a list of exceptions, none of which apply to appellant, and we are prohibited from inserting any.

The record provides ample evidence that appellant picked up the hammer, and then the knife, each with the express intent or purpose of putting Calvin and then Cheryl in fear of an imminent battery. This is an unlawful purpose. The trial court's convictions on these two counts must therefore be affirmed.

## III.

Anticipating that we would find the conviction on one count of assault to be erroneous, appellant asks that we remand for new sentencing on the grounds that the trial court clearly considered the alleged assault on Christopher in determining sentence.

In Maryland, a sentencing judge is vested with "virtually boundless discretion" in deciding what factors to consider on the issue of punishment. *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981). A review of the sentencing hearing reveals that the trial court here considered several factors including appellant's relationship with the victims of the assaults (or alleged assaults), his employment situation, and his prior criminal record. In addition, the trial court emphasized the proximity of the hammer to Christopher and the "special vulnerability of the victim, because it was a child." This however was not error. It is well settled in Maryland that "[a] trial court may 'properly consider reliable evidence concerning the details and circumstances surrounding a criminal charge of which a person has been acquitted.'" *Curry v. State*, 60 Md.App. 171, 183, 481 A.2d 812 (1984) (quoting *Henry v. State*, 273 Md. 131, 147–48, 328 A.2d 293 (1974)). The trial judge's concern

about potential injury to the child was not an impermissible consideration.

JUDGMENT OF CONVICTION OF ASSAULT UPON JAMES CHRISTOPHER HARROD REVERSED AND SENTENCE VACATED; ALL OTHER JUDGMENTS AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND CARROLL COUNTY.