TURNER ET AL. *v.* STATE

[No. 155, October Term, 1949.]

*Decided May 10, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*C. J. Lancaster,* with whom was *Albert R. Hassall* on the brief, for the appellants.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, A. Gwynn Bowie, State's Attorney for Prince George's County,* and *Harvey G. Machen, Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by William H. Turner and Alexander W. Stephens, appellants, from convictions on two indictments charging each with the operation of a gaming table and selling beer without a license. The evidence against these two appellants was obtained by a search of the premises without a search warrant or other warrant.

About 1:30 a. m. on Monday, May 15th, 1949, Officers King and Wiseman of the Prince George's County Police Force and Deputy Sheriff Shepp were patrolling the roads of Prince George's County. At that time they received a call by radio to proceed to the Bowie Restaurant because there was a fight at that address. At the time they arrived at the restaurant they found no disturbance. There were a number of people on

the outsíde. The officers went in and talked to Alexander W. Stephens, one of the appellants, and were advised by him that there had not been any trouble there. Stephens was closing up his restaurant for the night and followed the officers outside of the building. The officers in walking toward their car saw a small building on the other side of the road. A light was burning over the door leading into the basement or the first floor of what appeared to be a home. The officers saw a number of people around that door, some with bottles of beer in their hands. They also noticed people coming out of that door of the dwelling carrying bottles of beer. The officers asked Stephens about this place and were told that it was a private club and that they could not go over there. One of the officers said that in spite of this they walked over, went up to the door, some people were going in the door and the officers went right behind them. They saw no one there to stop them and "nobody had to knock on any door to go in." When asked the question on cross examination, "So then you went in without a warrant, although there was no disturbance there, nothing which might make you go in there to quiet anybody, or arrest anybody; is that right?", Officer King answered: "That is right." Officer Wiseman testified on direct examination that "there were cars pulled up in front, and people were out in front and we just went in to investigate, to see what kind of place it was." They walked "in just like you walk in any other open door saloon." On cross examination Officer Wiseman testified that "there were people milling around on the outside. * * * Well, it was quite a few of them there that was intoxicated." He said that he did not see any disturbance of the peace or any disorderly conduct before he entered the house and they just went over to investigate, "to see what kind of place it was, and see if the trouble was over there that we were called on." Deputy Sheriff Shepp testified. "We came back out of Patsy Johnson's started to go to the car, noticed a large gathering opposite Johnson's place, or Stephens' place, on the Laurel-

Bowie road, in front of what appeared at that time to be a home, except for a light down in the basement and a door, people going in and out of the door, crowd standing around front,—by 'crowd,' probably 12 or 14 people milling around there, laughing and talking, some with beer in their hands, drinking. So Officer Wiseman started across the street, I followed him across, Officer King; they went in the building, I went inside and stayed inside the door, by the door."

As the officers entered this first floor or basement room they saw forty or fifty people sitting in booths, some standing in the center of the floor and some at the bar. They saw William Turner put two bottles of beer on the counter and then turn and ring up an undisclosed amount on the cash register. Two people grabbed this beer and went back and sat down in a booth. In the center of the room there was a music box and two slot machines commonly called "one-armed bandits." They also saw bottles of beer on the table. Sergeant Thompson of the Prince George's County Police Force was called by radio and he arrived at the premises about 2:00 a. m. He played the two slot machines putting in three nickels and receiving four back on the third nickel. These two slot machines, seven cases of assorted beer, and the two defendants were taken to Hyattsville, where they were charged with the crimes set out in the indictments. Testimony was offered that the premises entered was that of Bowie Social Political Club, incorporated, that appellant Stephens was one of the incorporators of the corporation, and that the basement room entered was rented to Stephens. The remainder of the house was occupied as a home by other people. These premises had no license to sell beer and a search of the premises was therefore not authorized under the statute permitting the search of places authorized to sell alcoholic beverages. Code 1947 Supplement, Article 2B, section 161. *Zukowski v. State,* 167 Md. 549, 555, 175 A. 595.

Appellants claim that the evidence obtained when the officers entered the premises without a search warrant or any other warrant was not admissible against them.

Since the passage of Chapter 194 of the Acts of 1929, now modified by Chapter 752 of the Acts of 1947, Article 35, section 5, 1947 Supplement of the Code, commonly known as the Bouse Act, evidence obtained by means of an unlawful search and seizure is inadmissible in the trial of misdemeanors. *Silverstein v. State,* 176 Md. 533, 540, 6 A. 2d 465; *Leon v. State,* 180 Md. 279, 282, 23 A. 2d 706; *Frantom et al. v. State,* just decided, 195 Md. 163, 72 A. 2d 744. However, if a misdemeanor is committed in the presence or view of an officer he may arrest the offender immediately without a warrant. *Callahan v. State,* 163 Md. 298, 300-301, 162 A. 856; *Silverstein v. State, supra; Bass v. State,* 182 Md. 496, 505, 506, 35 A. 2d 155. After such an arrest the officer may, as an incident thereto, at the same time, search the person arrested and also search for and seize any evidence or instruments of the crime "whether upon his person or within his use and immediate control or possession." *Silverstein v. State, supra,* 176 Md. at page 541, 6 A. 2d at page 468; *Callahan v. State, supra,* 163 Md. 300-301, 162 A. 856; *Bass v. State, supra,* 182 Md. 506, 35 A. 2d 155; *Johnson v. State,* 193 Md. 136, 154, 66 A. 2d 504, 511. The room of the person arrested in which the commission of the crime was seen can be searched for tangible evidence and instruments of the crime. *Johnson v. State, supra,* 193 Md. 154, 66 A. 2d 511; *Silverstein v. State, supra,* 176 Md. 541, 6 A. 2d 465; *Hubbard v. State,* just decided, 195 Md. 103, 72 A. 2d 733.

Therefore, the question before this Court in this case is whether there was evidence that a misdemeanor was committed in the presence or view of the officers, before their entry, in the room entered. As was said in the case of *Romans v. State,* 178 Md. 588, at page 600, 16 A. 2d 642, at page 647: "* * * Committing an offense

in the presence of the public officer embraces not only what is seen, but, also, what is heard or is perceived by any other sense." *Johnson v. State, supra; Silverstein v. State, supra; Bass v. State, supra.*

In the case of *Gorman v. State,* 161 Md. 700, 158 A. 903, the officer, upon information received, watched for two successive days the home of the appellant where lottery violations were suspected. On each of these days he saw fifteen or more persons enter the house and leave carrying papers in their hands. On the third day a person entered the house through the front door, leaving it ajar. The officer pushed the door open and walked in without a warrant either to search the house or arrest the appellant. In that case this Court held that the search and seizure was illegal and the evidence obtained not admissible.

In the case of *Bass v. State,* 182 Md. 496, 35 A. 2d 155, *supra,* the appellants were indicted for violating the law prohibiting the showing of obscene motion pictures. The police department of Baltimore City had been forewarned as to the alleged obscene nature of the exhibition to be given at a pre-arranged stag party. A poster which had fallen into the hands of the police showed that at this party a so-called "strip tease" performance was to be given. Four officers were sent to the designated premises which was located on the fourth floor of a lodge building in Baltimore. The officers entered the building, went to the fourth floor and rapped on the first door they came to. They were refused admission and told that a private meeting was being held. The officers then walked to the opposite side of the building and one of them rang a bell at a door which was opened to them by one of the appellants. The officers then entered from the hall into an anteroom without any protest or hindrance. In this room were other persons including two women. While standing in this anteroom the officers heard remarks coming from the adjacent lodge room which indicated that an obscene and lewd show was in progress. They then turned the knob of

the door leading into the lodge room and entered. They stood there for several minutes and observed an obscene and uncensored motion picture which they later seized. They arrested seven officers of the lodge. The appellants claimed that the evidence obtained by the officers was inadmissible in the absence of a search warrant under the provisions of the Bouse Act, then Section 5, Article 35, 1939 Code. This Court in holding the evidence admissible pointed out that the officers had received advance notice of this proposed violation of the criminal law, which was the reason they entered the anteroom, and that this was no invasion of the privacy of an individual's home, the known tenant of the premises being a fraternal order or lodge of which the appellants were members. After being admitted to this anteroom, which involved no invasion of any constitutional rights or immunities, they heard sounds which indicated to them that the law was being violated in an adjoining room. These sounds indicated that the crime of which they had been forewarned, was being committed there. The offense was committed within the presence and view of the officers when their senses afforded them knowledge that it was being committed. Their entry of the room without a search warrant was therefore lawful and the evidence admissible.

In the case at bar the officers had no previous information or forewarning that a crime was being committed in the premises entered. The building entered according to the testimony of the officers appeared to them to be a home. They saw a number of people milling outside of the door of the dwelling with bottles of beer in their hands coming in and out of the door, and some were intoxicated. The officers admitted that even though there was no disturbance of the peace and no disorderly conduct and nothing which made them go in to quiet anyone or arrest anybody, they went right through the door in the house just to investigate what was going on.

If it was lawful for the officers to enter these premises without a warrant of any kind it would be lawful for

them to enter any premises where people were seen entering and leaving with beer in their hands and where no disturbances were being committed. Such a situation might apply to a party at a private home or at club meetings where beer is served. We are of opinion that the search and seizure in this case, made without a search warrant or other warrant, not for the purpose of making an arrest, and no offense being committed in the presence and view of the officers, was unlawful and the evidence procured thereby was not admissible.

The State contends that because some of the testimony of the officers, as to what they observed in the premises, was admitted by the Court without any objection on the part of the appellants, that objections to other evidence as to this line of testimony was waived and nothing is presented to this Court for review. *Damm v. State,* 128 Md. 665, 669, 97 A. 645; *Smith v. State,* 182 Md. 176, 184, 32 A. 2d 863; *Purviance v. State,* 185 Md. 189, 44 A. 2d 474; *Davis v. State,* 189 Md. 269, 55 A. 2d 702; *Barber v. State,* 191 Md. 555, 564, 62 A. 2d 616, 620; *Colie v. State,* 193 Md. 608, 69 A. 2d 497. However, the record clearly shows that when the State offered in evidence boxes filled with beer bottles taken out of the cooler in the Bowie Political Club, and the cases of beer and the two slot machines taken from the premises, objections were seasonably made by the appellants to the admission of these articles in evidence and the objections were overruled by the Court. Finding that these articles should not have been admitted in evidence, under the provisions of the Bouse Act, Article 35, Section 5, 1947 Supplement of the Code, *supra,* the judgments must be reversed.

*Judgments reversed, new trials awarded.*