## WANZER *v.* STATE

[No. 99, October Term, 1952.]

*Decided July 2, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*C. Orman Manahan* and *John F. Lillard, Jr.,* for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Daniel M. Murray, State's Attorney for Howard County,* on the brief, for the appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

Edward Wanzer, the appellant, was indicted by the Grand Jury for Howard County on eight counts, six of which charged violations of gambling statutes and two alcoholic beverage law violations. One of the gambling counts was abandoned by the State. A jury found the appellant guilty on the remaining seven counts, (five for gambling and two for liquor violations,) and the Court sentenced him to serve 11½ months in jail and to pay a fine of $500.00.

The principal questions raised on this appeal are as to: (1) whether the Court abused its discretion in refusing to grant a removal of the trial, in view of a certain newspaper publication; (2) the properiety of joining in one indictment counts for gambling and for liquor violations; and (3) the admissibility of evidence seized in a search of the traverser's premises.

The facts are simple and not seriously in dispute. At approximately 3 A.M. on Sunday, August 31, 1952, a state trooper, responding to a complaint from a neighbor that loud noises were emanating from Wanzer's property on Guilford Road, went there to investigate. When the trooper approached within 100 yards of the residence, he saw through a picket fence forty or fifty people many of them holding cans of beer, "milling around" on Wanzer's lawn. However, the trooper did not go into the property until he was accompanied by a Reverend Moore, who lived directly across Guilford Road from Wanzer and who had made the complaint; also a sergeant of the Howard County police, and Justice of the Peace Sanders. Other officers did not arrive till

later. After entering the property through the front gate the trooper and the sergeant started arresting those on the property for alleged disturbance of the peace. Approximately one hundred persons fled into the woods in the rear of the Wanzer home, but thirty-eight were arrested. The magistrate, it was testified, accompanied the trooper in order to sign arrest warrants and to fix collateral for those who were apprehended.

On the lawn the trooper saw a roulette wheel, not mounted, but lying close to an improvised gambling table. A bracket on the table was found, upon examination, to fit the roulette wheel. They then entered and searched certain outbuildings and finally the dwelling itself. What they found would be sufficient to show violation of both the gambling and liquor laws. The jury found him guilty on the seven counts which were submitted to them.

## I. *REFUSAL OF A CHANGE OF VENUE*

The appellant maintained that it was reversible error for the lower court to deny his petition, supported by an affidavit of counsel and seasonably filed, praying a change of venue on the ground that an account of the raid, published in the only local newspaper, was so inflammatory and prejudicial as to preclude a fair trial in Howard County. The newspaper article is as follows:

### 38 ARRESTED IN SURPRISE
### GUILFORD NIGHT CLUB RAID

State and Howard County police joined in a surprise raid early Sunday morning on a elaborate night club on the Guilford Road and arrested thirty-eight of the over hundred there. Seventy-five escaped through the woods and fields.

Quantities of liquor and gambling equipment were confiscated at the entertainment set-up covering an acre of ground with both indoor and outdoor bars and games and arrangements for night-club entertainment including 'strip-teasers' raiders report.

Trooper George Wells lead the raid on the tip of the Rev. Leonard Moore who lives across the road from the establishment which was surrounded by a 7 foot wooden fence on one side, a dense wood on the other and an open field at the back.

Edward Wanzer, 37, of Washington, was charged with illegal sale of intoxicating bevevrages and with violation of the gambling laws and was released under a $3,000 bond.

The other 37 arrested were charged with disorderly conduct. All but ten posted $17 collateral and others were taken to cells at the Waterloo State police barracks.

Wanzer and all but four of these arrested were Negroes. The four white men charged gave Washington addresses.

"The equipment included hammocks, tables, beach chairs, a barbecue pit and even a fish pond inhabited chiefly by turtles, police said.

Outside one shack stood a roulette game and betting table, Trooper Wells said. Inside, the raiders found a well-stocked bar.

Inside the second small structure, police found a long gaming table which could be used either for dice or cards, the raiders reported.

Another bar and more gambling devices were found inside the house, Wells said. The investigators also discovered an electric alarm system, extending from the gate and into all three structures, the trooper said."

We find in it nothing which supports traverser's contention that he was injured by its publication five weeks before the trial. Rather the account appears to be a factual disclosure, and except possibly for the reference to strip-teasers, the reporter seems not to have drawn on his imagination in describing the raid. This article can not with sound reason be characterized as "trial by newspaper". No facts were adduced to support

the bare assertion of prejudice, and the petition seems unpersuasive on its face. It is difficult to perceive how, without complete suppression of news, an account like the one in question could be made the basis of complaint. The two constitutional guarantees—freedom of the press and a fair trial by an impartial jury— sometimes present difficult problems to courts which are properly alert to protect both. The facts of this case present no such perplexity and we have no occasion on this record to consider or adjudicate questions which may be raised in proper manner upon different factual foundations. See *Downs v. State*, 111 Md. 241, 73 A. 893; *Baltimore Radio Show v. State*, 193 Md. 300, 67 A. 2d 497; *Larch v. State*, 201 Md. 52, 92 A. 2d 463; *Auchincloss v. State*, 200 Md. 310, 89 A. 2d 605.

The petition for removal in non-capital cases is addressed to the discretion of the court. This is, of course, a judicial discretion which, if exercised arbitrarly, is subject to correction on review, and there have been numerous instances, according to Chief Judge Bartol in *State v. McNally*, 55 Md. 559, of review and reversal. We find no abuse of discretion in denying the petition for removal.

## II.  JOINDER OF COUNTS FOR GAMBLING AND LIQUOR VIOLATIONS.

The appellant moved to quash the indictment for "misjoinder of counts".

Freqently indictments contain several counts alleging the same offense in different ways to meet the evidence, the details of which the prosecutor may not be able accurately to foresee before the trial. The use of multiple counts is not restricted to this situation, for it is well recognized that counts for distinct crimes may be combined, especially if they are of the same grade or if they are otherwise connected. *People v. Gates*, 13 Wend. (N. Y.) 311; *Pointer v. U. S.*, 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208; *Simmons v. State*, 165 Md. 155, 167 A. 60; *Wheeler v. State*, 42 Md. 563; *State v. Burk*, 2 H. & J. 426.

There is no rigid rule, and the only limitation is that courts will guard against injustice. Where the court, in its discretion, determines that there is reason to apprehend that the accused will be confounded, or the jury distracted by trial of the several counts together, he may order the State's Attorney to elect upon which counts he will stand, or in a clear case he may quash the indictment. *Simmons v. State, supra; State v. Bell,* 27 Md. 675; *State v. McNally,* 55 Md. 559. The defendant can not demand such action as of right where there is no basis for thinking that the joinder of the counts will embarrass him in the trial. Such was the rule at common law and it has been consistently followed in this State. *Simmons v. State, supra; Toomer v. State,* 112 Md. 285, 76 A. 118.

### III. POLICE ENTRY UPON APPELLANT'S PROPERTY.

We come next to the question of the legality of the police entry upon Wanzer's property.

To indicate that the traverser was conscious of no evil, defense counsel asserted in his opening statement to the jury and repeated during the trial that the gate of the Wanzer place was open to all, including specifically the police of Howard County. When a party makes a show of candor it would seem not unfair to him to accept his statements at their face value, and so it could perhaps be an answer to the claim of illegal entry to say that the appellant invited it. A party is ordinarily bound by admissions made by his lawyer in open court. However, we will decide the question on the merits because the statement is somewhat equivocal, and the testimony in the case seems to disprove the broad statement.

This is not a case in which authority to enter the premises could be claimed under Art. 2B, Sec. 179, Annotated Code of Maryland (1951), for the reason that Wanzer was not licensed to sell alcoholic beverages. Consequently, this section which authorizes "any peace officer * * * to inspect and search, without warrant, at all hours, any building * * * in which alcoholic beverages

are authorized to be kept * * *" is inapplicable.

Apart from consent, does the law permit entry by officers, without a warrant, upon private property under such facts as this case presents? The traverser concedes that before the entry, the officer, from his position on Guilford Road, heard loud dance music and laughter, and saw people moving about on the lawn. Entry on private premises to execute an arrest warrant is legal. *Hubbard v. State,* 195 Md. 103, 72 A. 2d 733. The precise question of the legality of entry without a warrant turns on whether the events seen and heard by the officers constituted the commission of a misdemeanor in their presence. The term "presence" is a word of art, denoting that before entry on the premises the commission of a misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. See *Turner v. State,* 195 Md. 288, 73 A. 2d 472, and authorities therein cited.

That a peace officer may arrest persons for the commission of a misdemeanor in his presence without a warrant is not to be questioned. *Callahan v. State,* 163 Md. 298, 162 A. 856; *Silverstein v. State,* 176 Md. 533, 6 A. 2d 465; *Bass v. State,* 182 Md. 496, 35 A. 2d 155.

It is established that a breach of the peace is such a misdemeanor as will authorize entry by the police upon private premises. There is a split of authority as to what constitutes a breach of the peace. Some decisions tend to broaden the definition by including any violation of order or decorum, and hold that fighting or rioting or a show or threat of violence is not an essential element; *Davis v. Burgess,* 54 Mich. 514, 20 N. W. 540; *State v. Reichmann,* 135 Tenn. 685, 188 S. W. 597; but we think the better rule is that of the common law which required evidence of an affray, actual violence, or conduct tending to or provocative of violence by others.

Some states are so insistent on violence, or acts tending to provoke it, as an element of a breach of the peace which will authorize officers to enter that it has been held that the use of vile, insulting and abusive language

falling short of direct threats or incitements to immediate personal violence or mischief will not suffice. *State v. Steger,* 94 W. Va. 576, 119 S. E. 682, 34 A. L. R. 570.

In *Regina v. Prebble,* 1 Frost. & F. 325, the defendants were indicted for assaulting a constable who attempted to evict them from a barn, attached to a public house, where they were drinking at a late hour of the night. Baron Bromwell, for the court, said, "The people were doing nothing illegal, nor contrary to any act of Parliament, and therefore the constable was not acting in the execution of his duty as such, although what he did may have been very laudable and proper. It would have been otherwise had there been a nuisance or disturbance of the public peace, or any danger of a breach of the peace."

The New York Court of Appeals has said, "The right of a police officer at common law to arrest summarily was a limited one. 'The common law did not authorize the arrest of persons guilty or suspected of misdemeanors, except in cases of actual breach of the peace either by an affray or by violence to an individual.' *People v. Phillips* (1940), 284 N. Y. 235, 30 N. E. 2d 488; citing *Stephen's History of the Criminal Law of England,* p. 193, *Chase's Blackstone 4th Ed.,* pp. 998, 999, and *6 C. J. S., Arrest, sec. 6 c.*" What might warrant an arrest for disorderly conduct or disturbing the peace in a public place might still not be sufficient to warrant police intrusion on a citizen's privacy.

The Attorney General referred to certain statutes which it is said were then and there being violated. An examination of these statutes convinces us that they furnish no basis for the police action. See Annotated Code of Maryland (1951). Art. 25, Sec. 23, makes it a misdemeanor to operate a public dance hall outside the incorporated limits of any town or city without a permit. It is questionable whether a 12′ x 27′ concrete surface, formerly the floor of a fire-gutted chicken house, on which couples were found dancing to a three-piece band, can be considered a public dance hall. Art. 27, Sec.

142, prohibits and punishes wilfull disturbances in a city or town by loud and unseemly noises. No evidence was offered to show that Wanzer's home was in a city or town, but it was shown that eleven other homes are located in proximity to Wanzer's. In *Enfield v. Jordan,* 119 U. S. 680, 7 S. Ct. 358, 30 L. Ed. 523, it was said: "In Maryland and most of the southern states, the political unit of territory is the county, though this is sometimes divided into parishes and election districts for limited purposes. The word 'town' is used in a broad sense to include all collections of houses from a city down to a village." This was, however, a civil case and the issue involved was the authority of a township to subscribe for railroad stock—a field remote from the criminal law. Whether this broad interpretation of the word "town" is permissible in a criminal statute is to be doubted for the rule is as stated in *3 Sutherland's Statutory Construction* (3 ed.), sec. 5503: "An example [of strict construction] is legislation imposing criminal penalties, where the courts are committed to a strict construction in favor of the citizen and against the State." See also, *Bishop on Statutory Crimes,* (3 ed.) (1901), sec. 299 a.

So also, Art. 27, sec. 146, cited by the State, punishes and prohibits disturbances of the peace, but is expressly made applicable only in Charles, Montgomery and Prince George's Counties, and Art. 27, sec. 144 prohibits and punishes disorderly conduct on certain public conveyances. Art. 27, sec. 578, denounces as a violation working or doing bodily labor on Sunday, or suffering one's children to do so. It is silent as to noise or other disturbances. Absence of any clear common law authority, coupled with the existence of such statutes as above recited of limited application, indicates caution in sanctioning police entry into the "curtilege" (i.e. the area surrounding a dwelling house) to suppress mere playing of music. The requirements of public order can ordinarily be met by police knocking on the door and giving admonition. Such, in fact, is the common practice.

Entry upon the premises, where the complaint is only against the playing of music, is not practically necessary or sanctioned in law.

*Turner v. State, supra,* rules this case. There officers responded to a radio call informing them of an alleged altercation at a restaurant. Finding no disturbance there and observing a small building across the road near the entrance to which were a number of people carrying bottles of beer, the officers proceeded to enter. Although admonished that it was a private club, the officers nevertheless persisted. In reversing the conviction, this court, speaking through Judge Collins, said, "We are of the opinion that the search and seizure in this case, made without a search warrant or other warrant, not for the purpose of making an arrest, and no offense being committed in the presence and view of the officers, was unlawful and the evidence procured thereby was not admissible." [195 Md. 288, 73 A. 2d 475]

We hold that the entrance of the police on the appellant's lawn and then into the house and the seizures made were illegal. We have no occasion to consider whether if the entry on the lawn had been legal the search could lawfully have been extended to the house. As there is not sufficient evidence independent of the discoveries made in the search to warrant a verdict of guilty, the judgment will be reversed.

*Reversed and new trial awarded.*