996 A.2d 974

**Brian Anthony HICKMAN**

v.

**STATE of Maryland.**

**No. 882, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

June 3, 2010.

Robert H. Harvey, Jr. of Prince Frederick, MD, for appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: DAVIS, WOODWARD, ALAN M. WILNER (Retired, Specially Assigned), JJ.

DAVIS, J.

Brian Anthony Hickman, appellant, notes this appeal from his June 15, 2009 convictions by the Circuit Court for Charles County for involuntary manslaughter and a common-law affray. Appellant elected to waive his right to a trial by jury and proceed with a court trial. At the conclusion of the evidence, the court found appellant guilty of involuntary manslaughter and a common law affray, but not guilty of second-degree assault due to the victim's consent to the fight. On June 15, 2009, the court sentenced appellant to two concurrent ten-year sentences with all but eighteen months suspended. The same day, appellant filed a Notice of Appeal. Appellant presents two issues for our consideration, which we have restated as follows:

I. Did the circuit court err in ruling that the common law crime of affray remains a viable offense in Maryland?

II. Did the circuit court err in giving inconsistent verdicts where it found appellant guilty of an affray but not guilty of second-degree assault? [1]

___

1. The issues, as stated in appellant's brief, are:
   I. Did the lower court err in ruling that the common law offense of affray remains a viable offense in Maryland?
   II. Was the verdict of the lower court inconsistent?

For the following reasons, we answer appellant's questions in the negative. Accordingly, we affirm the decision of the Circuit Court for Charles County.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On the evening of October 24, 2008, into the early morning hours of October 25, 2008, appellant, along with several friends, were drinking at a bar in Waldorf, Maryland. Also present at the bar was the victim, Joshua Gregor, who was drinking with several of his friends. Around 2:00 a.m., the bar closed. Gregor was standing outside smoking a cigarette when he and Justin Ferrell, one of appellant's friends, exchanged heated words. Eventually, Ferrell punched Gregor twice in the face, which caused Gregor to fall backward into the bar. Ferrell then walked toward the parking lot and joined his friends.

Gregor's friends, incensed at Ferrell's actions, followed Ferrell into the parking lot. According to witness accounts, Gregor also walked into the parking lot; however, he and another friend went in a different direction from Ferrell. In the parking lot, appellant confronted Gregor.[3] After Gregor and appellant exchanged harsh words, appellant struck Gregor twice in the head with his fists causing Gregor immediately to collapse. As he fell, his head hit the pavement and he never regained consciousness. Appellant and his friends fled the scene immediately thereafter.[4]

Police and ambulances responded to the scene and transported Gregor to the hospital. On October 27, 2008, Gregor succumbed to his injuries and died.

---

2. The following is based on the trial court's factual findings.

3. The trial court's factual findings were unclear as to whether Gregor approached appellant or appellant approached Gregor; needless to say, the victim and appellant confronted each other in the parking lot.

4. Appellant subsequently turned himself into the police.

On October 29, 2008, an autopsy was conducted, the medical examiner's results confirming that Gregor died from blunt force trauma to the head. The force of the blows fractured his skull and caused multiple hemorrhages, hematomas and contusions, which ultimately led to his death. On November 21, 2008, the State filed an indictment, charging appellant with involuntary manslaughter, second-degree assault and the common law offense of an affray.

On March 19, 2009, appellant filed a Motion to Dismiss Count 3–common law affray. In that motion, appellant argued that "[a]n affray at common law, was a form of assault and battery" and that, according to *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999), when the Maryland General Assembly enacted the consolidated assault statute in 1996, it eliminated all common law forms of assault and battery.[5] Therefore, appellant concluded, because an affray is a form of assault at common law, the offense no longer existed and, accordingly, he could not be charged with the offense.

Five days later, on March 24, 2009, the State filed its Response to appellant's Motion to Dismiss. The State agreed that, at common law, an affray is "the fighting of two or more persons in some public place to the terror of the people"; however, it argued that affray is a distinct crime from the common law forms of assault and battery. Likening an affray to robbery, which requires "a felonious assault" as an element, the State contended that an affray, while including assault and battery, required there to be "publicity attached to the fighting"; thus, it was distinguishable. The State also asserted that the legislature has not preempted the common law offense of an affray because the offense was "conspicuously absent from Chapter 632 of the Acts of 1996, from Subtitle 2 of Title 3 of

---

5. The parties repeatedly refer to the crime of assault and battery; however, we note that there was no single common law crime in Maryland known as "assault and battery." *Robinson v. State*, 353 Md. 683, 692 n. 5, 728 A.2d 698 (1999)(citing *State v. Duckett*, 306 Md. 503, 510, 510 A.2d 253 (1986)). Instead, they were two distinct offenses and, to denote this, we will refer to them in the plural throughout this opinion.

the 2008 Supplement to the Criminal Law Article, and from all versions of second and first degree assault in between." Moreover, the State pointed out, the Court of Appeals did not mention the offense of "affray" in its decision in *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999).

On April 1, 2009, before trial, the court heard the parties' arguments on the Motion to Dismiss. As appellant's counsel explained to the court, "[t]he basis for the Motion to Dismiss is that what was known . . . in the common law as an affray or mutual affray is no longer a cognizable offense." Appellant's counsel contended that the common law crime of an affray has not existed since 1996, when the Maryland General Assembly codified the assault statutes under Art. 27, §§ 12, 12A and 12A–1. *See* 1996 LAWS OF MARYLAND, Ch. 632. Appellant's counsel premised this argument on the conclusion that an affray necessarily involves the common law crimes of assault and battery and, therefore, it is a form of those crimes. Quoting from the Court of Appeals' decision in *Robinson v. State*, appellant argued that the assault statutes in the Criminal Law Article "as adopted represent the entire subject matter of the law of assault and battery" and, based on his argument that an affray was a form of assault, the statutes abrogated affrays as well.

Appellant's counsel likewise rebutted what he believed would be the State's argument against the Motion to Dismiss. He stated that the relationship between affrays and the common law forms of assault and battery differed from the relationship those crimes shared with robbery because the legislature specifically provided for robbery by statute. It was very clear, iterated appellant, that, as a result of the legislature's actions, robbery "retains its viability," while affrays do not. Appellant also argued that the common law crime of an affray was different from the common law crime of riot "because riot does[ not] require by necessity that there by [sic] any assaultive conduct or any battery." In conclusion, appellant's counsel stated, "I think that the Court [of Appeals] has made it very clear in *Robinson* that whatever existed in the form of assault and battery in the common law prior to the

enactment of the statutes in 1996 is now gone. There is no cognizable offense in Maryland called an affray."

In opposition, the State asserted that common law affray is not a form of common law assault and/or battery, nor has it ever been. While acknowledging that an affray necessarily involves a common law assault and a common law battery, the State reiterated the argument in its opposition to appellant's Motion to Dismiss, that so too does robbery, which, as the dissent in *Robinson* pointed out, was not abrogated with the codification of the assault statutes. The State also argued that affray was a separate and distinct offense because it requires two or more people, unlike assault that requires just one, and that an affray has the additional element that fighting must take place in public. The further distinction, the State posited, was that consent is never a defense to an affray, while it is a defense to the offenses of common law assault and battery. Finally, because the General Assembly is presumed to not disturb the common law, with certain exceptions, the State argued, it did not disturb the common law offense of an affray.

After considering the arguments of counsel, the court denied the motion, concluding that it was not persuaded by appellant's assertion that the 1996 assault statutes abrogated the common law offense of an affray. Upon review of the Court of Appeals' decision in *Robinson v. State* and the Committee notes [6] cited therein, the court stated that, if the General Assembly intended to include crimes other than assault and battery, "such as an affray—which has different elements" then it would have so stated. In sum, the court determined that neither the statutes, the Committee Notes

---

**6.** In *Robinson,* the Court of Appeals examined the Committee Notes made in conjunction with the bill revising Article 27, House Bill 749 (cross-filed as Senate Bill 618), which the General Assembly enacted as Chapter 632 of the 1996 Laws of Maryland. 353 Md. at 696, 728 A.2d 698. Additionally, the Court discussed the Committee Notes to precursors of that Bill introduced in the previous year's session, House Bill 844 and Senate Bill 513 of the 1995 General Assembly. *Id.* at 697, 728 A.2d 698.

nor the *Robinson* case supported the conclusion that an affray was not a viable crime in Maryland.

At trial, the court heard testimony from several witnesses, including appellant, and found him guilty of involuntary manslaughter and a common law affray, but acquitted him of second-degree assault based on Gregor's consent to the fight. Discussing the involuntary manslaughter conviction, the court stated:

> Therefore the guilt on Count 3—as discussed prior—previously between the Court and Counsel under the case of [*Schlossman v. State*, 105 Md.App. 277, 659 A.2d 371 (1995)], if you commit a misdemeanor *malum en se* wrongful in and of itself as opposed to *malum prohibitum* where there's—it becomes illegal from some—statute passed by the Legislature. And that *malum en se crime*, affray, results in the death then you're guilty of involuntary manslaughter which is the Count 1. That's how the—legally the case is . . . breaking down.
>
> . . .
>
> Some specific findings . . . it's . . . uncontroverted that Mr. Hickman delivered the blow that resulted in the—in the death of Mr. Gregor. It was a blow to the face that caused Mr. Gregor to hit the asphalt so hard that his skull was fractured—causing as Doctor Alexander testified, blunt force trauma injury to his brain, that—that caused a—pressure build-up and—and resulted in his . . . death.

Regarding the assault, the court stated:

> Part of the evidence here that—that—when I first heard it didn't appear very significant, but was [sic] the location of Mr. Gregor when—when the police got there, that's in the middle of the parking lot. And I think as Mr. Eichelberger testified to, Mr. Hickman approached him at that location. Mr. Gregor was—was not backing down. That he voluntarily went out [to the parking lot] to engage in the affray as did Mr. Hickman and the results we all know.
>
> . . .

[Eichelberger] characterized—I—believe he characterized Mr. Gregor and Mr. Hickman as confronting each other and as I say I'm satisfied that's the way it went down.

. . .

I do not believe that—accepting those facts as I do this is a case of self-defense by Mr. Hickman. And I—I reject that as a defense.

. . .

I—I think the State has not proven to my satisfaction beyond a reasonable doubt that it was an assault. I find it was an affray not an assault so that's the not guilty for the—for the assault.

. . .

I've indicated that since—Mr. Gregor went out there with—with the—willingness to engage in—in a fight that—that—he consented to the fight that took place so that would be a defense to second degree assault.

Finally, regarding the conviction of a common law affray, the court explained:

All right, we'll just make a couple of legal statements here as to what an affray is. We—we've had some discussion about this before. I—I've relied on Corpus Juris Secundum's definition, Volume 2(A); they have a chapter on affray.

Again, its [sic] mutual combat, two or more people—that has a—a [sic] aspect which is frightening to the—to the public at large. I think that's what happens here is you— as—as we can all see when—when you have these—these types of brawls where—the results are so catastrophic it is—it is a terror to the public. And—so I think it—it satisfies that definition.

There's Wharton's Criminal Law, it's Section 536, also gives a common law definition of affray's [sic] are fights between two or more persons in public places to the terror or alarm of the citizens.

We've had discussion about battery. The—the Court believes that—as—even though consent is a defense to

battery that interpretation of requiring that criminal battery as part—of—of an affray is—is inconsistent with the nature of the—of the offense. That's—that's my decision on that issue.

We've discussed the Horkheimer definition. I—I feel that the Horkheimer def—definition supports the Court's conclusion—when it's—when—his definition is it's not necessary that it should be by consent. Well, the reserves [sic] of that would then be true. By implication it—there could be consent in an affray.

. . .

Again, in—in—in summary, I believe that—Mr. Hickman when—when—Mr. Gregor moved out past—Mr. Ramer that—he was willing to—to fight him. And he went out as indicated by Mr. Eichelberger and Mr. Smalling to fight him. . . .

And they met, they fought and we're here. So that—the Court has rendered it's verdict and I—and I'm required to—to go when—when there's a court trial the—the Judge is required to put an explanation on the record which I've done.

Thereafter, the court ordered that a Pre–Sentence Report be completed. On June 15, 2009, the court sentenced appellant to two ten-year sentences to run concurrent, with all but eighteen months suspended. That same day, appellant filed a Notice of Appeal.

## LEGAL ANALYSIS

### I

The first issue before us is one of first impression, namely, whether the common law crime of an affray exists in Maryland in light of the Court of Appeals' decision in *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999).[7] Appellant asserts that an

---

7. Assuming that an affray is a viable common law offense in Maryland, this case presents the additional issue of whether the evidence was

affray is a form of the common law crimes of assault and battery and, therefore, the *Robinson* decision abrogated the offense. The State contends that, while the common law crime of an affray does include the offenses of common law assault and battery, an affray is a separate and distinct crime and, thus, it remains a viable offense.

Unlike other states, which have codified the common law offense of affray, Maryland has not and, therefore, if the offense exists, it is clearly only as a matter of common law. Our research has failed to uncover any case, however, in which this Court or the Court of Appeals has expressly examined the definition or elements of the common law offense of an affray. This Court has mentioned, tangentially, when discussing the common law offense of riot, that the common definition of an affray is " 'two or more persons fight[ing] in a public place to the terror of the King's subjects.' " *Schlamp v. State,* 161 Md.App. 280, 290, 868 A.2d 914 (2005) *rev'd on other grounds,* 390 Md. 724, 891 A.2d 327 (2006) (quoting Halsbury, *The Laws of England* § 919 (1909)). This definition is consistent with that provided by the treatise *Corpus Juris Secundum,* which states, "[a]n affray as it is defined by the common law is the mutual combat of two or more persons in a public place to the terror of the people." 2A C.J.S., *Affray,* § 1.

---

sufficient to demonstrate that the fight at issue was "to the terror of the people." The evidence presented at trial was that the only witnesses to the fight were the participants; thus, there was no terror to persons not involved. This is an issue that the Maryland courts have not decided. Some states, such as Alabama and South Carolina, presume terror to the people when the fighting occurs in a public place. *See Carwile v. State,* 35 Ala. 392, 394 (1860) ("Terror to the people is presumed from the fighting in a public place.") (citing *State v. Sumner,* 36 S.C.L. 53, 53 (S.C.Ct.App.1850) (indicating that the affray in question took place "in the corporate limits" of a city)). Florida requires evidence of witnesses, but has alluded to support for the position that terror may be presumed simply by the presence of witnesses. *See D.J. v. State,* 651 So.2d 1255, 1256 (Fla.Dist.Ct.App. 1st Dist.1995) (citing *Carwile,* 35 Ala. 392); *see also* 12 Am. Jur. 2d *Breach of Peace and Disorderly Conduct* § 20. Other states require evidence that the citizens actually were frightened or in terror. *See State v. Heflin,* 27 Tenn. 84, 85–86 (1845). Notwithstanding, we decline to address this issue as it was not raised by appellant.

Despite our inability to uncover any prior Maryland cases with an in-depth analysis of affray, Maryland case law does demonstrate that common law affray has, historically, been a chargeable common law offense. *See, e.g., Baltimore & O.R. Co. v. Cain,* 81 Md. 87, 100, 31 A. 801 (1895) ("But the right of a person not an officer to make an arrest is not confined to cases of felony, for he may take into custody, without a warrant, one who in his presence is guilty of an affray or a breach of the peace."); *Hamlin v. State,* 67 Md. 333, 338, 10 A. 214 (1887) ("As for instance, where two persons are indicted for an affray...."); *Wanzer v. State,* 202 Md. 601, 609, 97 A.2d 914 (1953); *Lewis v. State,* 289 Md. 1, 2, 421 A.2d 974 (1980); *Schlamp v. State, supra,* 161 Md.App. 280, 868 A.2d 914. Specifically, in *Lewis,* 289 Md. 1, 421 A.2d 974, the appellant challenged his convictions emanating from an indictment that included a charge of a common law affray. There, the Court declined to hold that an affray was no longer a common law offense in Maryland, although the Court was presented with the occasion to do so.

Notwithstanding the Court's holding in *Lewis, supra,* appellant argues that the common law offense of an affray is no longer a viable offense. He points out that an affray, by the use of the term combat, "necessarily involves an assault and battery...." Lewis Hochheimer, *The Laws of Crimes and Criminal Procedure,* § 284, p. 281 (2d. Ed., 1904). Appellant reasons that, if the crimes of common law assault and battery are elements of an affray, then an affray must be a form of common law assault and battery. Extrapolating, he concludes that, in light of the Court of Appeals' decision in *Robinson v. State, supra,* 353 Md. 683, 728 A.2d 698 (1999), in which the Court recognized that statutes enacted in Maryland have abrogated common law assault and battery, the crime of an affray is likewise no longer a cognizable offense in Maryland. Thus, according to appellant, his conviction for affray must be reversed and, concomitantly, so must his involuntary manslaughter conviction.

Appellant argues that common law assault and battery are necessary elements of an affray and that the Court of Appeals

in *Robinson* held that, following the 1996 statutory enactments of the assault statutes, common law assault and battery ceased to exist as crimes in Maryland. The State disputes appellant's assertion, however, that, merely because an affray involves common law assault and battery, it is a form of those crimes. The State contends that an affray cannot be a form of common law assault and battery because it requires different elements. Specifically, assault and battery "do not require two participants, need not take place in public, and need not cause the public terror or harm." Additionally, the State contends that an affray is a separate and distinct crime because, unlike assault and battery, an affray is not a crime against persons; rather, it is a crime against the public peace. Thus, an affray is more akin to a riot and related offenses and not assault and battery. Finally, the State notes that defenses, *e.g.*, consent, are available to a defendant charged with common law assault and battery, but are not for a defendant who is charged with an affray.

■ Initially, we recognize that neither *Robinson v. State* nor the 1996 statutory enactments codifying assault expressly discussed the common law offense of an affray. *Robinson* and the statutes only discussed "assault and battery." The failure of the statute to state that it did not abrogate this common law offense is significant; as the Court of Appeals noted, it is a generally accepted rule of law that "statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law.'" 353 Md. at 693, 728 A.2d 698 (quoting *Lutz v. State*, 167 Md. 12, 15, 172 A. 354 (1934)). Thus, it is only if a common law affray can be considered a form of the common law assault and battery offenses that it would be abrogated. Based on our analysis of the offenses, common law affray is a separate and distinct offense, which was not abrogated by *Robinson* and, accordingly, appellant was properly charged and convicted. We explain.

We begin by setting forth the common understanding of the offenses of common law assault and battery. Common law assault is defined in two modalities: attempted battery and intent to frighten. The intent to frighten type of assault " 'requires a specific intent to place the victim in reasonable apprehension of an imminent battery.' " *Wieland v. State,* 101 Md.App. 1, 38, 643 A.2d 446 (1994) (quoting *Lamb v. State,* 93 Md.App. 422, 445, 613 A.2d 402 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993)). "[T]he victim must be aware of the impending contact." *Harrod v. State,* 65 Md.App. 128, 138, 499 A.2d 959 (1985) (citation omitted). The attempted battery modality of assault requires a substantial step toward the completion of a battery, with the apparent present ability to do so. *Id.* at 131–35, 499 A.2d 959. Unlike the intent to frighten variety of assault, there is no need for the victim to be aware of the impending battery in the attempted battery variety of assault. *Id.* Common law battery is the "unlawful application of force to the person of another." *Epps v. State,* 333 Md. 121, 127, 634 A.2d 20 (1993). It is characterized as the unjustified, offensive and non-consensual application of force. *See* Rollin M. Perkins & Ronald N. Boyce, Criminal Law 166–67 (3d. ed. 1982); *see also Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056 (1991); *Taylor,* 52 Md.App. at 504, 450 A.2d 1312; *Woods v. State,* 14 Md.App. 627, 629–33, 288 A.2d 215 (1972).

A common law affray differs from common law assault and battery in two significant respects, *i.e.,* additional elements and different victims. First, and most importantly, to sustain a conviction for common law affray, the State must prove additional and different elements from the crimes of common law assault and battery. An affray must be committed in public and requires two or more persons, while an assault may be committed out of the public eye and can be a unilateral act. *See Thompson v. State,* 70 Ala. 26, 28 (1881). The public requirement is the most significant difference from the common law forms of assault. *Wilkes v. Jackson,* 12 Va. 355, 359–60 (1808). As the Supreme Court of Tennessee explained:

To constitute an affray, a necessary and indispensable ingredient is, that the fighting must be in some public place. This circumstance alone, distinguishes an affray from *another distinct substantive offence at common law, viz, an assault.*

*State v. Heflin,* 27 Tenn. 84, 85 (1845) (emphasis added).

■ "It is because the violence is committed in a public place, and to the terror of the people, that the crime is called an affray, instead of assault and battery." *Cash v. State,* 2 Tenn. 198, 199 (1813). Simply by requiring proof of additional elements, affrays, assaults and batteries clearly cannot be considered forms of the same offense. This is so because, due to the additional elements, one who commits an affray will necessarily commit an assault or battery, while one who commits an assault or battery will not necessarily commit an affray. *See Heflin,* 27 Tenn. at 85–86 ("It clearly follows, says Hawkins' Pleas of the Crown, 1 vol. 487, that there may be an assault which will not amount to an affray, as where it happens in a private place out of the hearing or seeing of any except the parties concerned; in which case it cannot be to the terror of the people.")

■ A second significant difference between the crimes, which demonstrates that affray is neither a form of common law assault or battery, is the victim, or party against whom the crime is committed. "An affray is an aggravated disturbance of the public peace and is an offence exclusively against the public." 2A C.J.S. Affray, § 5 (citing *Childs v. State,* 15 Ark. 204 (1854) and *State v. Weekly,* 29 Ind. 206 (1867)). An affray is, therefore, characterized as a public disturbance, a crime against the public and its aim is to protect the peace. *People v. Perry,* 265 N.Y. 362, 193 N.E. 175, 177 (1934). By contrast, an assault can be a crime against an individual and, in this respect, differs significantly from the non-personal offense of an affray. *Cf. Taylor v. State,* 214 Md. 156, 159, 133 A.2d 414 (1957) (stating that criminal assault can be a breach of the public peace or a crime against a person). As stated by the renowned authority on the English common law, Sir

Matthew Hale,[8] "An assault is but a wrong to the party, but an affray is a wrong to the Commonwealth." Sir Matthew Hale, *The History of the Pleas of the Crown*, Vol. II at 92 (8th ed. 1800).

■ Based on these distinctions, while assault may be an element of an affray, an affray is not a form of common law assault or common law battery. Although an indictment charging a common law affray is, in effect, also one for several assaults and batteries, *Carnley v. State*, 88 Fla. 281, 102 So. 333, 334 (1924), there are significant differences between the offenses that make clear that an affray is a separate and distinct offense from common law assault and battery. Accordingly, we hold that common law affray continues to be a viable offense in the State of Maryland.

## II

■ Appellant next presents the antithetical argument that his acquittal of the offense of second-degree assault coupled with his conviction of common law affray results in inconsistent verdicts. In his words, appellant posits:

---

**8.** The common law in Maryland is derived from our ancestral connections with English law. The English common law became part of the Maryland common law when the Declaration of Rights was adopted on November 3, 1776. Article 3 of the Declaration of Rights originally provided, in pertinent part, "[t]hat the Inhabitants of Maryland are entitled to the Common Law of England ... subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State." Md. Decl. of Rights, Art. 3. This provision is currently embodied in Article 5. Additionally, much of Maryland's adoption of the English common law extends farther back than 1776, as Judge Eldridge noted in *Baltimore Sun Co. v. Mayor and City Council of Baltimore*, 359 Md. 653, 661–62, 755 A.2d 1130 (2000). Judge Eldridge, writing for the Court of Appeals, discussed the adoption of the common law and noted that the common law of England was adopted

as early as 1639, when the Maryland General Assembly approved the "Act for the Liberties of the People," and that the "rights embodied in the Act of 1639, specifically the right to the benefits of the common law of England, are presently embodied in Article 5 of the Maryland Declaration of Rights, originally enacted in August 1776."

If the above analysis is correct, and the common law crime of affray "necessarily involves" an assault and battery, than the verdict in the trial court was inconsistent. A person cannot be guilty of affray and not guilty of assault. Assault is an element of the crime of affray.

\*     \*     \*

Here the lower court's explanation of the inconsistent verdict was based upon a misinterpretation of the law. The court apparently felt that because Mr. Mr. Gregor consented to fight the appellant he could not be guilty of second-degree assault, when he could be guilty of affray.

■ As stated *supra*, the court found appellant guilty of an affray, but not guilty of second-degree assault, Crim. Law. § 3–202, based on the defense of consent. Appellant asserts that he could not be found guilty of an affray while simultaneously being found not guilty of assault because an assault is a necessary element of an affray. Citing *State v. Williams*, 397 Md. 172, 189–90, 916 A.2d 294 (2007), he acknowledges that a court may impose inconsistent verdicts if it gives a satisfactory explanation for the *apparent* inconsistency on the record. (Emphasis added). As the Court of Appeals observed in *Smith v. State*, 412 Md. 150, 164–65, 985 A.2d 1204 (2009):

This Court has addressed inconsistent verdicts several times in recent years. Until 2008, we joined most jurisdictions in following the "normal" rule that inconsistent verdicts were generally acceptable. *Price v. State*, 405 Md. 10, 19, 949 A.2d 619, 624 (2008). By 2008, however, we had also identified a wide variety of exceptions to that rule. For example, seemingly inconsistent verdicts by a trial judge in a non-jury trial were, and still are, only acceptable if the trial judge explains the *apparent* inconsistency on the record. *Williams*, 397 Md. at 189–90, 916 A.2d at 305; *Johnson v. State*, 238 Md. 528, 544–45, 209 A.2d 765, 772 (1965). Inconsistent verdicts were unacceptable in criminal trials *when the judge rendered guilty verdicts that were inconsis-*

*tent with non-guilty verdicts rendered by the jury. Gallo-way v. State, 371 Md. 379, 401, 809 A.2d 653, 667 (2002).* (Emphasis added).

Appellant's argument is novel. Essentially, he insists that the trial court's acquittal of second-degree assault based on the victim's consent coupled with his conviction for common law affray results in inconsistent verdicts. Having found him innocent of the offense of second-degree assault based on the victim's consent, the trial court could not have relied on the defense of consent to explain the inconsistent verdict of guilty for the common law crime of an affray. The basis of the trial court's inconsistent verdict, according to appellant, was that it was of the view that consent was a defense to the crime of second-degree assault, but not to the common law offense of an affray. Accordingly, the trial court found that he had, in fact, punched the victim twice in the head, but he was not guilty of the assault because the victim had consented to the fight. The court concluded, however, that consent was not a viable defense to an affray and, therefore, appellant would be guilty of the offense of an affray because he had fought the victim in public. Citing *Taylor v. State,* 214 Md. 156, 159, 133 A.2d 414 (1957), appellant asserts that the assault was not an assault against a person, but instead, was "a breach of the public peace," to which Gregor could not have consented and, thus, to which consent was not a defense. In *Taylor,* the Court of Appeals opined:

> The courts which have dealt with the effect of consent as a defense to a charge of criminal assault have divided criminal assault into two general types. A criminal assault which tends to bring about a breach of the public peace is treated as a crime against the public generally, and therefore the consent of the victim is no defense. On the other hand, a criminal assault which is not accompanied by the threat of serious hurt or breach of the public peace is treated as a crime against the person, and the consent of the person assaulted is held to be a good defense, since the absence of consent is an essential element of the offense.

*Id.* (citing 4 Am. Jur., *Assault and Battery,* §§ 83, 89; 6 C.J.S., Assault and Battery, § 90; Note, 15 L.R.A. 853; Wharton, Criminal Law, 12th Ed., vol. 1, Sec. 835; Russell on Crime, 10th Ed., Vol. 1, p. 760; *R. v. Donovan* [1934], 2 K.B. 498.) Appellant argues that the second-degree assault charge against him constituted a breach of a public peace variety of assault because it took place in a public parking lot and, therefore, consent is not a defense.

The State argues that the court adequately explained its verdict because the court found that appellant committed the assault, which was sufficient to satisfy his conviction for affray; however, the court could not convict appellant on the assault charge because the State failed to prove that the victim did not consent to the assault. Thus, the court properly acquitted appellant of that charge, but convicted him of an affray. The State also contests "the validity of the distinction between assaults that breach the public peace and those that do not," stating that the difference "is certainly questionable in light of the abrogation of the common law assault and battery." The State also posits: "Even assuming *arguendo* that the distinction is still good law, the trial court could have determined that the indictment in this case charged Hickman with the type of assault for which consent is a defense."

Appellant was charged with second-degree assault and, in light of both the indictment and the trial court's findings, it is apparent that he was charged with the battery form of assault, which, at common law, is the unlawful unjustified, offensive and non-consensual application of force to the person of another. As explained in the Maryland Pattern Jury Instructions for Second-degree Assault, to sustain a conviction for assault of the battery variety, the State must prove:

(1) that the defendant caused [offensive physical contact with] [physical harm to] (victim);

(2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and

(3) *that the contact was not consented to by* (victim) [or not legally justified].

Maryland Criminal Pattern Jury Instructions, Second–Degree Assault 4:01 (emphasis added).

■ This instruction is clearly consistent with the definition of battery set forth in case law, which requires that the offense force be "non-consensual." A conviction for the intentional battery variety of second-degree assault requires that the State adduce "legally sufficient proof that the perpetrator intended to cause harmful or offensive contact against a person *without that person's consent* and without legal justification." *Elias v. State*, 339 Md. 169, 183–84, 661 A.2d 702 (1995). Thus, notwithstanding appellant's assertions to the contrary, the lack of consent, as the court so found, is clearly a necessary element to sustain a conviction of second-degree assault against appellant.

As a result, the court explained why the acquittal of appellant for second-degree assault was not inconsistent. Although the Court of Appeals has increasingly limited the instances where juries and trial judges may render inconsistent verdicts, *see, e.g. Price v. State*, 405 Md. 10, 949 A.2d 619 (2008), "seemingly inconsistent verdicts by a trial judge in a non-jury trial were, and still are, only acceptable if the trial judge explains the apparent inconsistency on the record." *Smith v. State*, 412 Md. 150, 164, 985 A.2d 1204 (2009) (citing *Williams*, 397 Md. at 189–90, 916 A.2d 294; *Johnson v. State*, 238 Md. 528, 544–45, 209 A.2d 765 (1965)). The trial judge in this case adequately explained his "seemingly" inconsistent verdict on the record.

The court found that appellant and Gregor "squared off" in the parking lot, engaged in threats and that appellant hit Gregor twice, ultimately delivering the blow that caused the victim's demise. The court likewise found, however, that Gregor entered the parking lot with the intention of engaging in combat and, thus, consented to the assault. This "consent" prevented the court from finding appellant guilty of second-degree assault, although appellant's actions satisfied all other elements of the offense. The court continued, explaining that the defense of consent does not apply to the common law

offense of an affray. Consent, the court observed, is irrelevant regarding the affray, *see State v. Renda,* 125 Me. 451, 134 A. 571 (1926); *see also* 2A C.J.S. *Affray,* § 8 (stating that "At common law an affray does not require an agreement or consent of both parties to fight . . . .") and likewise in situations of mutual combat. *See* 6 Am. Jur. 2d. *Assault and Battery,* § 53 (citing *Hodges v. Schuermann Bldg. & Realty Co.,* 174 S.W.2d 909 (Mo.Ct.App.1943); *State v. Dunham,* 118 Ohio App.3d 724, 693 N.E.2d 1175 (1st Dist. Hamilton County 1997)). Thus, the trial court, having determined that appellant had struck the fatal blows, adequately explained why appellant's conduct was sufficient to be "fighting" or "mutual combat" under the common law offense of affray. The court, however, properly acquitted appellant of the statutory offense of second-degree assault.

**JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**